**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| Turtle Island Foods, SPC, doing business as | ) | |
| The Tofurky Company; and | ) | |
| The Good Food Institute, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 18-cv-4173 |
| | ) | |
| Mark Richardson, in his official capacity as | ) | |
| Cole County Prosecuting Attorney and | ) | |
| on behalf of all Missouri Prosecuting Attorneys, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      This is a civil-rights action challenging the constitutionality of Mo. Rev. Stat.
§ 265.494(7), as amended by 2018 Senate Bills 627 & 925 (the Statute). The Statute criminalizes
truthful speech by prohibiting "misrepresenting" a product as "meat" if that product is "not
derived from harvested production livestock or poultry." A violation of the Statute carries a
penalty of incarceration up to one year as well as a fine of as much as $1,000. The Statute is
effective August 28, 2018.

2.      Plaintiffs—a plant-based meat corporation and a nonprofit corporation that helps
create and support companies that produce plant-based and clean meats, including through
advocacy—seek injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 that the Statute is
unconstitutional on its face and as applied to them.

3.      The Statute is a content-based, overbroad, and vague criminal law that prevents
the sharing of truthful information and impedes competition by plant-based and clean-meat

1

companies in the marketplace. The Statute does nothing to protect the public from potentially misleading information. As such, the Statute violates the Free Speech Clause of the First Amendment, the Dormant Commerce Clause, and the Due Process Clause.

## JURISDICTION AND VENUE

4.     This action arises under the Constitution of the United States and the provisions of 42 U.S.C. § 1983. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a).

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)–(2) because the named defendant resides in Cole County, which is located in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in Cole County.

6.     Venue is proper in the Central Division pursuant to L.R. 3.1 (a)(2) and L.R. 3.1 (b)(2).

## PARTIES

7.     Plaintiff Turtle Island Foods, SPC, doing business as The Tofurky Company, is a social purpose corporation incorporated in the State of Washington and headquartered in Hood River, Oregon.

8.     Plaintiff Turtle Island Foods uses the trademark name "Tofurky" for most of its plant-based products.

9.     Plaintiff Turtle Island Foods (Tofurky) develops, produces, markets, and sells plant-based food products. The products are marketed and sold nationwide, including throughout Missouri.

10.     Plaintiff The Good Food Institute (GFI) is a nonprofit corporation created and operating under the laws of Washington, D.C. It advocates for clean meat and plant-based

2

alternatives to conventional meat products. GFI expends resources to educate and support plant-based and clean meat companies that do business in Missouri.

11.      Defendant Mark Richardson is the Cole County Prosecuting Attorney. He is sued in his official capacity only and as representative of a defendant class of county prosecuting attorneys who enforce the criminal laws of the state of Missouri.

12.      Defendant and other members of the putative Defendant Class have acted, and continue to act, under color of state law at all times relevant to this complaint.

## FACTS

### Plant-Based and Clean Meats

13.      Some consumers are increasingly aware of how their food choices affect the environment, animal welfare, and their own health. Other consumers simply want to diversify their food choices. As a result, more and more consumers are choosing to eat plant-based meats instead of meat from slaughtered animals.[1]

14.      Plant-based meats are foods that approximate the texture, flavor, and appearance of conventional meats from slaughtered animals. They are served and consumed just like any other meats. Plant-based meats are typically made from soy, tempeh, wheat, jackfruit, textured vegetable protein, or other vegan ingredients. Many plant-based meats are currently available in grocery stores, restaurants, and other retailers.

15.      Clean meats are made of muscle tissue cultured *in vitro* from animal cells. Clean-meat producers add nutrients like salts and sugars to animal cells, which grow into muscle tissue that approximates conventional meat. Clean meat is an emerging industry that has attracted

---

[1]      T. Waters, *Americans are grilling more plant-based 'meats,'* ST. LOUIS POST-DISP. (Aug. 3, 2017), https://www.stltoday.com/business/local/americans-are-grilling-more-plant-based-meats/article_01dc699a-5bab-5539-963c-eb4165a7db8f.html ( "Burgers made from plants instead of animals are capturing more space on U.S. barbecue grills this summer, fueling sales in the niche products that could reach $5 billion globally by 2020.").

Case 2:18-cv-04173-FJG   Document 1   Filed 08/27/18   Page 3 of 22

corporate investors like Tyson and Cargill as well as individual investors like Bill Gates and Richard Branson.[2] It is not yet sold in supermarkets or restaurants.

16.     Animal agriculture industry representatives have warned producers that competition from plant-based and clean-meat substitutes is one of the "major challenges" the animal meat industry faces in 2018.[3]

### History of the Statute

17.     The Missouri Cattlemen's Association proposed the language of the Statute in its initial form and presented it to Senator Sandy Crawford for introduction.[4] The language that later became the Statute was introduced in a pair of House bills as well.

18.     The three lawmakers who initially introduced the language of the Statute— Senator Crawford, Representative Jeff Knight, and Representative Warren Love—have extensive ties to the animal agriculture industry.

19.     Senator Crawford publicly acknowledged that she championed the law because "we wanted to protect our cattlemen in Missouri and protect our beef brand."[5]

---

[2]     R. Morgan, *Bill Gates and Richard Branson are betting lab-grown meat might be the food of the future*, CNBC (Mar. 23, 2018), https://www.cnbc.com/2018/03/23/bill-gates-and-richard-branson-bet-on-lab-grown-meat-startup.html.

[3]     C. Jolley, *Six Greatest Ag Challenges for 2018*, FEEDSTUFFS (Dec. 6, 2017) http://www.feedstuffs.com/commentary/six-greatest-ag-challenges-2018. *See also* http://www.beefusa.org/CMDocs/BeefUSA/Media/2018%20Policy%20Priorities_vF-2.pdf.

[4]     S. Brown, *How Missouri Began to Tackle Fake Meat: Missouri Sen. Sandy Crawford*, DROVERS (May 31, 2018), https://www.drovers.com/article/how-missouri-began-tackle-fake-meat-missouri-sen-sandy-crawford (quoting Sen. Crawford as stating that the beef industry trade group approached her "with an idea for a bill . . . and that bill was what we dubbed the fake meat bill").

[5]     *Id.* (stating that the law began with conversations with the Missouri Cattlemen's Association and "other aligned agriculture commodity groups and restaurants").

4

20.     When discussing the perceived need for the Statute to be enacted, Representative Knight publicly stated that: "We're just trying to protect our product."[6]

21.     The language of the Statute as introduced by Senator Crawford and the representatives was eventually incorporated into an omnibus agriculture bill sponsored by Senator Brian Munzlinger.

22.     Senator Munzlinger is himself a member of the Missouri Cattlemen's Association and has other ties to the animal agriculture industry.

23.     The history, context, and language of the Statute indicate that the General Assembly intended the Statute to apply to plant-based meat and clean meat companies and to prohibit them from marketing their products as "meat" analogues or using the term "meat" or related meat terminology (e.g., "chicken," "beef," "sausage") in the advertising, labeling, and packaging of their products.[7]

24.     The aim of the Statute is to protect the animal agriculture industry from competition from plant-based meat and clean meat producers.

25.     The Statute was introduced and enacted with the intent of commercially harming the plant-based meat and clean meat industries and restricting speech by plant-based meat and clean meat producers to protect the conventional meat industry from competition.[8]

---

[6]     A. Shurr, *General Assembly: Missouri meat must meet meat definition*, THE MISSOURI TIMES (May 17, 2018), https://themissouritimes.com/51224/general-assembly-missouri-meat-must-meet-meat-definition/.

[7]     *See, e.g.*, *Third Reading of Senate Bills in House* (May 17, 2018) (Rep. Jay Houghton: "We've got companies and individuals that want to rename what fruits and vegetables are and call them 'meat.'"; Rep. Greg Razer: "And I know what plants are, and I know what plant products are. And while they might be able to be put together to make a great and perhaps tasty alternative to chicken, pork, or beef, it's not chicken, pork, or beef. It's a plant."); *see also supra* n.4.

[8]     *Id.* (stating that "supporters argued [that] plant-based products and laboratory-grown food products would be excluded from being labeled as meat" under the Statute and quoting Missouri Cattleman's Association Executive Vice President Mike Deering as stating that to label a plant-based meat with "traditional nomenclature . . . weakens the value of products derived from actual livestock production"); *Third Reading of Senate Bills in House* (May 17,

5

26.     On June 1, 2018, then-Governor Eric Greitens signed the omnibus agriculture bill that included the Statute into law.

27.     The Statute, which will be codified at Mo. Rev. Stat. § 265.494(7), goes into effect on August 28, 2018.

## Language and Scope of the Statute

28.     Mo. Rev. Stat. § 262.900.1(8) defines "meat" as "any edible portion of livestock or poultry carcass or part thereof."

29.     The Statute makes it illegal to "misrepresent[] a product as meat that is not derived from harvested production livestock or poultry." Mo. Rev. Stat. § 265.494(7).

30.     In pertinent part, the Statute reads:

> No person . . . shall engage in any misleading or deceptive practices, including, but not limited to, any one or more of the following: . . . **misrepresenting a product as meat that is not derived from harvested production livestock or poultry** . . .

31.     Violating the Statute is a Class A misdemeanor that can be punished by a jail term of up to one year, a fine up to $1,000, or both. Mo. Rev. Stat. § 265.496.

## Consumers Are Not Confused

32.     There was no evidence of consumer confusion about the ingredients or source of plant-based meats, including Tofurky's products, before the Statute went into effect.

33.     The Office of the Missouri Attorney General—the agency responsible for protecting consumers and preventing misleading business practices—has received zero complaints from consumers who accidentally purchased plant-based meats that they believed to be meat from slaughtered animals.

---

2018) (Rep. Knight: "all we're trying to do is basically just protect our meat industry"; Rep. Razer: "We have to protect our cattle industry, our hog farmers, our chicken industry.").

34.     The labels and marketing materials of Tofurky, as well as the plant-based meat companies that GFI advocates for, all clearly indicate the products are plant based, meatless, vegetarian, or vegan and, thus, are entirely truthful and do not violate applicable labeling requirements set forth by the federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 343(a).

35.     The marketing and packaging of plant-based products reveals that plant-based food producers do not mislead consumers but instead *distinguish* their products from conventional meat products while also describing how these plant-based meat products can fulfill the same roles conventional meat has traditionally played in consumers' meals.

36.     Plant-based meat products that use such terms like "deli slices," "burger," "sausages," or "hot dogs," with accompanying qualifying and descriptive language, clearly indicate that the products are plant based and accurately convey to consumers the products' ingredients.

37.     Consumers are not likely to be confused by use of the term "meat" to refer to foods other than slaughtered animals because, historically, the term "meat" has had multiple meanings, including to describe the edible part of any food, such as a fruit or nut. In fact, the very oldest usages of the term "meat," and its analogues in the predecessor languages to Modern English (Old English *mete*, Proto-Germanic *-mati*, and Proto-Indo-European *mad-i-*), are to describe nourishment or food generally.

38.     Even today, product labels, recipes, and the U.S. Food and Drug Administration[9] use the term "meat" when referring to part of a nut or fruit. This does not confuse consumers.

---

[9]     FDA Guidance for Industry: Questions and Answers on Juice HACCP Regulation (Sept. 4, 2003), *available at* https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Juice/ucm072602.htm ("Coconut is considered to be a fruit and any liquid extracted from coconut (i.e., water or milk from the meat) is considered a juice . . ."); FDA Guidance for Industry on Reference Amounts Customarily Consumed (Feb. 2018), *available at*

7

39.     Moreover, in the decades that plant-based producers have used the terms "beef," "meat," "sausage," and other analogues together with accompanying language explaining that the products are plant based, meatless, vegan, or vegetarian, there have been no consumer-protection lawsuits in Missouri—or any other state—challenging the accuracy of plant-based meat products' marketing or packaging.

**The Statute Violates Plaintiffs' Speech Rights**

40.     Commercial speech, including words on labels and in marketing materials, is protected by the First Amendment.[10]

41.     The Statute poses a mandatory restriction on truthful commercial speech.

42.     The Statute seeks to prevent effective commercial communication by Plaintiffs.

43.     The criminal sanctions in the Statute seek to prevent plant-based and clean meat producers, including Tofurky, from accurately informing consumers what their products are: foods designed to fulfill the roles conventional meat has traditionally played in a meal.

44.     A consumer who is looking for a plant-based product that has the texture of chicken but is not the product of animal slaughter would find a label that includes terms such as "teriyaki chick'n strips" or "slow roasted chick'n" in addition to a declaration that the product is plant based more useful than a label that says only "*plant-based food product*."

45.      The government cannot establish (1) that the Statute's restriction on truthful commercial speech directly advances a substantial government interest or (2) that there is a "reasonable fit" between the Statute's restrictions and the interest it is designed to serve.

---

https://www.fda.gov/downloads/food/guidanceregulation/guidancedocumentsregulatoryinformation/ucm535370.pdf ("Coconut concentrate is an extract of the cooked mixture of water and coconut meat . . .").

[10]     *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980); *Friedman v. Rogers*, 440 U.S. 1 (1979).

46.     The government's interests are not proportional to the resulting burdens placed on Plaintiffs' and others' speech and the law seeks to suppress a message disfavored by the government.

47.     The Statute is content based and cannot withstand First Amendment scrutiny because there is no reason "remedies other than content-based rules would be inadequate." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 575 (2011).

48.     Any statute that restricts commercial speech to prevent deception may not be broader than reasonably necessary to prevent the deception.

**Other Laws Already Prevent Actually Misleading or Deceptive Labeling**

49.     Current state and federal regulations already prohibit misrepresentations in the marketing or packaging of food products.

50.     For example, Missouri law prohibits "false or misleading statement[s]" in the promotion of goods for sale. Mo. Rev. Stat. § 570.140.

51.     Plant-based meat labels fall within the Food and Drug Administration's jurisdiction under the FDCA.

52.     The FDCA categorizes a food product as "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a).

53.     FDA has never brought an enforcement action against a plant-based food company for labeling its products as "meat" analogues or using the term "meat" or related terms in their labeling.

9

54.     In addition, the Federal Trade Commission (FTC) enforces consumer-protection laws to ensure that products—including food products like plant-based meats—are described truthfully and that consumers understand what they are buying.[11]

55.     FTC has concurrent jurisdiction with FDA; FTC regulates the marketing and advertising of food products, enforces consumer-protection laws to ensure that products—including food products like plant-based meats—are described truthfully and consumers understand what they are paying for, and allows packaging labels as long as they are accurate and not misleading.[12]

56.     In other words, FTC already has the authority to ensure that plant-based products that use the term "meat" or advertise "as meat" are marketed in a manner that is truthful and not misleading and that consumers have adequate information to make well-informed purchasing decisions.

57.     FTC has not taken enforcement action against plant-based meat products for marketing their products as meat analogues or using meat terminology.

58.     FTC's post-market review of advertising claims provides an additional tailored remedy to curb deception without overly restricting truthful commercial speech—thus promoting the goals embodied in the First Amendment and making the Statute extraneous.

59.     In its comments to FDA on First Amendment commercial speech doctrine, FTC recognized that:

---

[11]     *See* 15 U.S.C. § 45 (prohibiting "unfair or deceptive acts or practices" in or affecting commerce).

[12]     The FTC Act's prohibition on "unfair or deceptive acts or practices" encompasses food marketing. *See* Memorandum of Understanding Between the Federal Trade Commission and the Food and Drug Administration, MOU 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 (June 1954), *available at* https://www.fda.gov/aboutfda/partnershipscollaborations/memorandaofunderstandingmous/domesticmous/ucm115791.htm; *Fresh Grown Preserve v. FTC*, 125 F.2d 917 (2d Cir. 1942).

10

In practice, consumer protection agencies often must choose between the risk of allowing commercial speech that might prove to be false or misleading and the risk of banning commercial speech that might prove to be true. . . . Available evidence suggests . . . that ***the general benefits of an enforcement approach that encourages dissemination of truthful information, while vigorously attacking misleading claims when they occur, produces benefits for consumers***.[13]

60.     In other words, an enforcement action by FDA or FTC that mirrored the language of the Statute would, similarly, violate the First Amendment.

61.     The Statute's blanket restrictions on speech are neither necessary nor appropriate to prevent consumer deception.

62.     The Statute violates Plaintiffs' First Amendment right to engage in truthful commercial speech, is overbroad, and is vague. Because the Statute targets companies like Tofurky for the purpose and with the effect of discriminating against interstate commerce, the Statute also violates the Dormant Commerce Clause.

### Effect of the Statute on Plaintiffs

63.     Plaintiff Tofurky produces, markets, and sells the following products clearly labeled as plant based, vegan, or vegetarian and using descriptive terms including: "slow roasted chick'n;" "deli slices" in varieties including "smoked ham" and "bologna;" "veggie burgers;" "hot dogs;" "sausages;" grounds in varieties including "DIY chorizo," "DIY breakfast sausage," "DIY Italian sausage," "chorizo," and "ground beef style;" and "ham roast."

64.     These products are marketed and sold in Missouri and nationwide.

65.     Labels for these products include modifiers like "veggie," "all vegan," and "plant based" that clearly indicate that the products do not contain meat from slaughtered animals. For example, Tofurky's current packaging includes the following:

---

[13]     FTC Staff Provides the FDA with Comments on First Amendment Commercial Speech Doctrine, 2002 WL 31106156 (emphasis added).









12



66.     However, because its labels include terms applied also to conventional meat, like "kielbasa," "hot dogs," "ham roast," "burgers," and "bologna," Tofurky reasonably fears prosecution under the Statute.

67.     The Statute criminalizes Tofurky's truthful and non-misleading speech and exposes the company to the substantial risk of prosecution for its speech.

68.     GFI advocates for plant-based meat and clean-meat companies, whose products do not contain slaughtered animals. These companies are in various states of maturity. Some are in early stages: GFI helps these companies form and launch their products. Others are more mature.

69.     GFI is a nonprofit corporation engaged in advocacy that distributes educational information to the public and offers its services to plant-based and clean meat companies free of charge because it believes that these companies contribute to the creation of a humane, healthy, and sustainable food supply.

70.     Plant-based meat companies currently market their products as meat analogues and use meat and meat-related terminology in the labeling of their products include: "vegan jerky," "meatless vegan jerky: seitan," "smart bacon: veggie bacon strips," "teriyaki chick'n strips: meat-free," "the ultimate beefless burger," and "beyond meat: beyond beef crumbles, plant-based protein crumbles."

71.     GFI advises its partners that these labels are permissible under the FDCA and the First Amendment.[14]

72.     Partners of GFI who use these common-sense terms on their labels and marketing materials in Missouri now face a credible threat of prosecution for their speech.

---

[14]     The Good Food Institute, *Producers' First Amendment Right to Use Clear Labels on Food*, https://www.gfi.org/images/uploads/2018/05/FirstAmendmentFactsGFI.pdf.

14

73. Startup companies that are in the process of bringing plant-based meat and clean-meat products to the market also face uncertainty about whether they can use common-sense labels that consumers understand in order to convey information about the characteristics their products share and do not share with conventional meat.

74. The Statute has forced new companies to consider creating one set of labels for Missouri and another set for other states, potentially raising the cost to come to market.

75. GFI also advocates for policies to ensure that plant-based and clean meat companies can compete on a level playing field with the products of conventional animal agriculture.

76. Prior to the introduction of the Statute, GFI focused on federal policy. Now the organization has been forced to divert resources to advise its partners how to navigate state-level prohibitions.

77. The Statute has already caused and continues to cause GFI to divert resources away from other matters in order to address the effects of the Statute, which has impaired GFI's ability to carry out its mission and fund its other organizational priorities to the same extent it would have in the absence of the Statute.

78. Tofurky and GFI intend to continue engaging in their protected speech and advocacy activities.

79. The Statute is specifically designed to and will significantly disadvantage Plaintiff Tofurky and the companies with which Plaintiff GFI works closely because it restricts how they can market, advertise, and sell their products in the marketplace. The Statute prevents marketing products as meat analogues or using meat terminology in truthful and non-misleading ways.

15

80.     Plaintiff Tofurky and Plaintiff GFI's partners cannot accurately and effectively describe their products without comparison to the conventional meat products they are designed to replace.

81.     Compliance with the Statute would have a severe detrimental impact on Plaintiff Tofurky's nationwide marketing and packaging of its products.

82.     Since 1980, Plaintiff Tofurky has invested significant time and expense in developing its products and marketing and packaging those products in truthful and non-deceptive ways.

83.     Yet, because of the Statute, Plaintiff Tofurky must now either: (1) choose to continue to have its products sold in the State of Missouri as packaged, at a substantial risk of criminal prosecution; (2) design, produce, and distribute different, specialized marketing and packaging for its products when they will be sold in the state of Missouri, creating a logistical nightmare in distribution channels that service neighboring states, or (3) change the entirety of its marketing and packaging nationwide because of the Statute, at considerable expense, and causing confusion to its consumers.

84.     Each of these options puts Plaintiff Tofurky at a significant commercial disadvantage for no legitimate reason in that they require Tofurky to incur costs and to abstain from describing its products in a manner that consumers already understand.

85.     In addition to this real and severe harm, other real market disadvantages exist as a result of the Statute. For instance, retail chains that operate in Missouri and other states may be less likely to carry plant-based meat products, including those produced and sold by Plaintiff Tofurky, if they cannot do so in the same manner in all of their stores.

16

86.     Plaintiffs may also be liable for their media advertising in other states that spills over into Missouri markets (including regional and national advertising that reaches Missouri consumers through print, television, radio, and the internet), and, additionally, compliance with the Statute may create bad will for Plaintiffs—as customers become frustrated with the unavailability of plant-based meat products in Missouri.

87.     These harms, in conjunction with the added expense the Statute causes in forcing plant-based food companies, including Plaintiff Tofurky, to specifically tailor their products' labels for distribution in Missouri, demonstrate that the Statute's burden is excessive when weighed against the illusory, unproven need to prevent alleged consumer confusion, which is the pretense for the Statute.

88.     Because Plaintiff Tofurky markets and labels products in such a way that could be construed as "misrepresenting a product as meat that is not derived from harvested production livestock or poultry," it may be criminally prosecuted under the Statute.

89.      Tofurky's plant-based meat products, including those specifically referenced in this complaint, are distributed throughout Missouri at many retailers, including: Walmart, Target, Dierbergs, Whole Foods, Fresh Thyme Farmers Market, Natures Own Health Food Market, Hy-Vee, Natural Grocers by Vitamin Cottage, Greenacres Market, Gerbes, Pyramid Foods, Lucky's Farmers Market, and Mama Jeans Natural Foods Market.

## DEFENDANT CLASS ALLEGATIONS

90.     Defendant is a member of a class of prosecuting attorneys in Missouri.

91.     Defendant Cole County Prosecuting Attorney and all prosecuting attorneys throughout this State have the authority to enforce the statutory provisions and prosecute any alleged offenders.

92.     There are 114 counties in Missouri and 115 Prosecuting Attorney Offices, including the Prosecuting Attorney for the City of St. Louis (a city not within a county), which makes the members of the prospective Defendant Class so numerous that joinder of all members of the class would be impracticable.

93.     The Statute requires the Defendant Class to engage in conduct implicating the constitutional rights of Plaintiffs such that there is a common nucleus of operative facts and law.

94.     Any defenses that could be raised by the Defendant would have the same essential characteristics of the defenses of the Defendant Class at large.

95.     Defendant Richardson will fairly and adequately protect the interests of Missouri Prosecutors.

96.     Defendant and members of the putative defendant class have the authority and responsibility to enforce the Statute within their respective jurisdictions and, in doing so, will be acting under color of law.

### COUNT I
### Violation of Civil Rights - 42 U.S.C. § 1983
### First Amendment

97.     Plaintiffs incorporate by reference the allegations made in the preceding paragraphs as if each were fully set forth herein.

98.     Plaintiffs have the right, under the First Amendment of the United States Constitution, to engage in truthful commercial speech and to control the content of that speech, as well as to engage in protected advocacy activities.

99.     The Statute unreasonably restricts this right by prohibiting Plaintiffs from making truthful statements about the identity, quality, and characteristics of vegan and plant-based products, including referring to plant-based products using meat and meat analogue terms.

18

100.    Specifically, the Statute prohibits Plaintiffs from truthfully labeling, marketing, and advertising plant-based meat products in a manner that effectively describes them as replacements for conventional meat products.

101.    The Statute criminalizes Plaintiffs from engaging in protected speech.

102.    The Statute criminalizes speech based on its content.

103.    The Statute prevents Plaintiffs from discussing truthful and non-misleading information about matters of public significance.

104.    There is no substantial state interest in the speech restrictions in the Statute, and the restrictions and requirements go far beyond what would be necessary to protect any purported state interest in preventing consumer deception.

105.    There is no reason "remedies other than content-based rules would be inadequate" to directly achieve any purported government interest. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 575 (2011).

106.    The Statute is facially overbroad because it violates the rights of third parties not before the court, including those who would sell clean meats, and because it restricts substantially more speech than the Constitution permits in comparison to its plainly legitimate scope. *See United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010).

107.    The Statute criminalizes not just the protected speech of Plaintiffs, but of any plant-based meat or clean meat company that does business in Missouri, many of which work closely with Plaintiff GFI, which has had to divert resources from other protected activities— including activities central to its mission and priorities—because of the Statute.

**COUNT II**
***Violation of Civil Rights - 42 U.S.C. § 1983***
***Dormant Commerce Clause***

19

108.    Plaintiffs incorporate by reference the allegations made in the preceding paragraphs as if each were fully set forth herein.

109.    Enforcement of the Statute violates the Dormant Commerce Clause because the Statute aims to put Plaintiff Tofurky at a disadvantage in Missouri in order to protect local economic interests from interstate competition.

110.    The plain text and legislative history of the Statute make clear that it is intended *not* to protect consumers from deceptive marketing or labels but to disadvantage plant-based meat producers whose products are distributed in Missouri, including Plaintiff Tofurky, regardless of their conduct and the fact that their speech is constitutionally protected.

111.    Moreover, the Statute's targeting of plant-based meat products comes at the behest of in-state livestock and poultry producers who do not wish to compete against Plaintiff Tofurky and other plant-based meat producers' products. Even a neutrally-worded regulation that is directed equally at interstate and local business violates the Dormant Commerce Clause if it imposes an excessive burden on interstate commerce in relation to its putative local benefits.

112.    This discriminatory treatment of Tofurky and other plant-based meat producers is unconstitutional because Defendants cannot demonstrate that the benefits of the criminal law outweigh its discriminatory effects.

113.    In addition, by erecting barriers to Tofurky's ability to operate in Missouri, the Statute has excessively burdened interstate commerce in relation to any local benefits it allegedly confers. The Statute will reduce Tofurky's business in the state. This is detrimental both or consumers and for interstate commerce.

114.     The Statute impedes the flow of interstate commerce in food, which the public has a strong interest in keeping affordable and accessible. It has the effect of regulating products, conduct, and commerce occurring outside Missouri's borders.

115.     The Statute creates a genuine, credible, and immediate threat of harm to Plaintiffs' businesses and interstate commerce in general.

116.     Any one of the burdens imposed by the Statute outweigh any putative benefit to Missouri consumers.

**COUNT III**
**Violation of Civil Rights - 42 U.S.C. § 1983**
**Due Process**

117.     Plaintiffs incorporate by reference the allegations made in the preceding paragraphs as if each were fully set forth herein.

118.     The Statute fails to provide persons of ordinary intelligence a reasonable opportunity to understand when or how a product label or other marketing information misrepresents a product as meat and thus authorizes or encourages arbitrary and discriminatory enforcement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray this Court:

   a.  Upon motion, grant a preliminary injunction preventing the enforcement of the Statute;

   b.  Grant a permanent injunction preventing the enforcement of the Statute;

   c.  Enter a declaration that the Statute is unconstitutional on its face and as applied to Plaintiffs;

   d.  Award costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

21

e. Allow such other and further relief as this Court finds just.

Respectfully submitted,
/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114

Gillian R. Wilcox, #61278
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, MO 64111
Phone: (816) 470-9938

Matthew Liebman*
Amanda M. Howell*
Alene Anello*
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, California 94931
Phone: (707) 795-2533

Jessica Almy*
The Good Food Institute
1380 Monroe St. NW #229
Washington, DC 20010
Phone: (866) 849-4457

* *pro hac vice* motions forthcoming

**Attorneys for Plaintiffs**