**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| Turtle Island Foods, SPC, doing business as | ) | |
| The Tofurky Company; and | ) | |
| The Good Food Institute, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-4173 FJG |
| | ) | |
| Mark Richardson, in his official capacity as | ) | |
| Cole County Prosecuting Attorney and | ) | |
| on behalf of all Missouri Prosecuting Attorneys, | ) | |
| | ) | |
| Defendants. | ) | |

**Suggestions in Support of
Plaintiffs' Motion for Preliminary Injunction**

1

**Table of Contents**

I.   Background ................................................................................................................ 6

II.  Argument ................................................................................................................... 7

   A.   Eighth Circuit standard for preliminary injunction ........................................ 7

   B.   Plaintiffs will succeed on the merits of their First Amendment claim. ....................... 7

      1.   Plaintiffs' speech is protected by the First Amendment. ............................................... 8

      2.   The Statute is subject to at least intermediate scrutiny. ................................................. 8

         a.   *Central Hudson* threshold question: The government cannot meet its burden of demonstrating that Plaintiffs' speech is false or inherently misleading. .................. 10

         b.   First prong of *Central Hudson*: The government cannot meet its burden of demonstrating that it has a substantial interest in suppressing Plaintiffs' speech. .... 13

         c.   Second prong of *Central Hudson*: The government cannot meet its burden of demonstrating that the Statute directly and materially advances any substantial interest. ................................................................................................................. 13

         d.   Third prong of *Central Hudson*: The government cannot meet its burden of demonstrating that the Statute is no more extensive than necessary. ........................ 16

   C.   The loss of speech rights is an irreparable harm, and Plaintiffs also satisfy the remaining *Dataphase* factors. ............................................................................... 17

III. Conclusion ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*1-800-411-Pain Referral Serv., LLC v. Otto*
    744 F.3d 1045 (8th Cir. 2014)................................................................ 10, 11

*44 Liquormart, Inc. v. Rhode Island*
    517 U.S. 484 (1996) ........................................................................ 8, 14

*Amos v. Higgins*
    996 F. Supp. 2d 810 (W.D. Mo. 2014).......................................................... 7

*Ang v. Whitewave Foods Co.*
    2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) ................................................ 12

*Assoc. of Nat'l Advertisers, Inc. v. Lungren*
    809 F. Supp. 747 (N.D. Cal. 1992) ........................................................ 15

*Bates v. State Bar of Ariz.*
    433 U.S. 350 (1977) ...................................................................... 11

*Bloom v. O'Brien*
    841 F. Supp. 277 (D. Minn. 1993) ...................................................... 11, 15

*Bolger v. Youngs Drug Prods. Corp.*
    463 U.S. 60 (1983) ...................................................................... 14

*Central Hudson Gas and Elec. Corp. v. Pub. Serv. Comm'n of New York*
    447 U.S. 557 (1980) ................................................................*passim*

*Child Evangelism Fellowship of Minn. V. Minn. Special Sch. Dist. No. 1*
    690 F.3d 996 (8th Cir. 2012)............................................................. 19

*City of Houston v. Hill*
    482 U.S. 451 (1987) ...................................................................... 9

*Dataphase Sys., Inc. v. C L Sys., Inc.*
    640 F.2d 109 (8th Cir. 1981).......................................................... 7, 17, 18

*Edenfield v. Fane*
    507 U.S. 761 (1993) ................................................................*passim*

*Educational Media Co. at Va. Tech, Inc. v. Insley*
    731 F.3d 291 (4th Cir. 2013)............................................................. 9

*Elrod v. Burns*
    427 U.S. 347 (1976) ...................................................................... 17

Case 2:18-cv-04173-FJG   Document 24   Filed 10/30/18   Page 3 of 21

*Fed. Election Comm'n v. Wisc. Right To Life, Inc.*
  551 U.S. 449 (2007) ........................................................................................ 8

*Gitson v. Trader Joe's Co.*
  2015 WL 9121232 (N.D. Cal. Dec. 1, 2015) ................................................... 15

*Ibanez v. Fla. Dep't of Bus. & Prof'l Reg.*
  512 U.S. 136 (1994) ................................................................................ 10, 16

*Krantz v. City of Fort Smith*
  160 F.3d 1214 (8th Cir. 1998) ........................................................................ 16

*Lorillard Tobacco Co. v. Reilly*
  533 U.S. 525 (2001) ................................................................................ 13, 16

*Minn. Citizens Concerned for Life, Inc. v. Swanson*
  692 F.3d 864 (8th Cir. 2012) ..................................................................... 7, 17

*Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*
  323 F.3d 649 (8th Cir. 2003) ........................................................................... 8

*Missourians for Fiscal Accountability v. Klahr*
  830 F.3d 789 (8th Cir. 2016) ........................................................................ 17

*Mo. Broadcasters Ass'n v. Lacy*
  846 F.3d 295 (8th Cir. 2017) ........................................................................ 16

*Ocheesee Creamery LLC v. Putnam*
  851 F.3d 1228 (11th Cir. 2017) ............................................................... 10, 12

*Painter v. Blue Diamond Growers*
  2017 WL 4766510 (C.D. Cal. May 24, 2017) ................................................ 15

*Passions Video, Inc. v. Nixon*
  458 F.3d 837 (8th Cir. 2006) ..................................................................... 9, 13

*Pearson v. Shalala*
  164 F.3d 650 (D.C. Cir. 1999) ............................................................ 11, 15, 16

*Peel v. Att'y Reg. & Disciplinary Comm'n*
  496 U.S. 91 (1990) ............................................................................ 11, 12, 13

*Phelps-Roper v. Nixon*
  509 F.3d 480 (8th Cir. 2007) ..................................................................... 17, 19

*Planned Parenthood of Minn., N.D., S.D. v. Rounds*
  530 F.3d 724 (8th Cir. 2008) ..................................................................... 7, 19

4

*Reed v. Town of Gilbert*
    135 S. Ct. 2218 (2015) .................................................................................................... 9

*Rubin v. Coors Brewing Co.*
    514 U.S. 476 (1995) ........................................................................................................ 8

*Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*
    997 F.2d 484 (8th Cir. 1993) ........................................................................................ 18

*Sorrell v. IMS Health Inc.*
    564 U.S. 552 (2011) ................................................................................... 8, 9, 10, 13

**Statutes**

Mo. Rev. Stat. § 56.060 ......................................................................................................... 6

Mo. Rev. Stat. § 265.220 ....................................................................................................... 6

Mo. Rev. Stat. § 265.494(7) ........................................................................................... *passim*

Mo. Rev. Stat. § 265.496 ....................................................................................................... 6

## I.    Background

On August 28, 2018, a Missouri statute criminalizing truthful speech went into effect. Amendments to Mo. Rev. Stat. § 265.494(7) make "misrepresenting a product as meat that is not derived from harvested production livestock or poultry" a Class A misdemeanor, punishable by incarceration up to one year and a fine up to $1,000. *See* Mo. Rev. Stat. § 265.496 (penalty provision). Through the Statute, the Missouri legislature intended to—and did—criminalize the use of the word "meat" and meat-related terminology in the marketing and packaging of plant-based meat products.

Plaintiffs include the advocacy organization The Good Food Institute (GFI) and Tofurky, a plant-based meat producer whose products are marketed and sold in Missouri. *See* Declaration of Bruce Friedrich, GFI Executive Director (Oct. 12, 2018) ¶¶ 1, 6, **attached hereto as Plaintiffs' Exhibit 1**; Declaration of Jaime Athos, Tofurky President and CEO (Oct. 29, 2018) ¶ 3, **attached hereto as Plaintiffs' Exhibit 2**. Some of Tofurky's products are labeled variously as "veggie burgers," "chorizo style sausage," "slow roasted chick'n," "plant-based jumbo hot dogs," and "vegetarian ham roast." Ex. 2 ¶¶ 4, 5 and Attachment. The Statute could be interpreted by Missouri's prosecutors[1] to outlaw those and other similar descriptors, by casting them as "misrepresent[ations]."

There is no evidence that these product terms and descriptors are misleading to consumers. Indeed, the Statute was intended *not* to protect consumers but instead to protect the state's cattle, pork, and chicken industries.[2] That interest cannot justify a law that impinges upon

---

[1]    *See* Mo. Rev. Stat. § 265.220 ("Prosecutions under this chapter shall be begun and carried on in the same manner as other prosecutions for misdemeanors in this state."); Mo. Rev. Stat. § 56.060 ("Each prosecuting attorney shall commence and prosecute all civil and criminal actions in the prosecuting attorney's county . . . .").

[2]    *See, e.g.*, *Third Reading of Senate Bills in House* (May 17, 2018) (Rep. Knight: "all we're trying to do is basically just protect our meat industry"; Rep. Razer: "We have to protect our cattle industry, our hog farmers, our chicken industry."), http://mohouse.granicus.com/MediaPlayer.php?view_id=1&clip_id=742 (embedded video),

Plaintiffs' First Amendment speech rights. Because enforcement of the Statute will cause Plaintiffs irreparable harm, they seek a preliminary injunction and request that this motion be set for a hearing.

## II.     Argument

### A.  Eighth Circuit standard for preliminary injunction

In deciding whether to issue a preliminary injunction, courts in the Eighth Circuit consider the four factors articulated by the *Dataphase* court: (1) the probability that Plaintiffs will prevail on the merits, (2) whether Plaintiffs face a threat of irreparable harm absent the injunction, (3) the balance between the harm Plaintiffs face and the injury that the injunction's issuance would inflict upon Defendants, and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *accord Amos v. Higgins*, 996 F. Supp. 2d 810, 812 (W.D. Mo. 2014).

When a plaintiff demonstrates likely success on a First Amendment free-speech claim, the remaining factors are generally deemed to be satisfied. *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). In this case, all four *Dataphase* elements weigh strongly in favor of a preliminary injunction.

### B.  Plaintiffs will succeed on the merits of their First Amendment claim.

In order for the first factor to weigh in the movant's favor, the movant must be "substantially likely" to prevail on the merits of its claim. *Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–32 (8th Cir. 2008). Plaintiffs are substantially likely to prevail

---

Declaration transcribing remarks attached hereto as Plaintiffs' Exhibit 3; S. Brown, *How Missouri Began to Tackle Fake Meat: Missouri Sen. Sandy Crawford*, Drovers (May 31, 2018) (video of Sen. Crawford stating that the beef industry trade group approached her "with an idea for a bill . . . we dubbed the fake meat bill" and "we want to protect our cattlemen in Missouri and protect our beef brand"), https://www.drovers.com/article/how-missouri-began-tackle-fake-meat-missouri-sen-sandy-crawford (embedded video), **PDF of written Drovers text reflecting some content of video attached hereto as Plaintiffs' Exhibit 4.**

7

on their First Amendment claim here because they wish to engage in truthful, nonmisleading speech that is prohibited by the Statute, and the government cannot carry its burden to demonstrate that the Statute directly and materially advances a substantial government interest without being more extensive than necessary.

### 1.  Plaintiffs' speech is protected by the First Amendment.

Plaintiff Tofurky markets and packages commercial products that are sold in Missouri. Ex. 2 ¶ 3. The marketing and packaging of commercial products contain speech. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 495–99 (1996); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481 (1995) (noting that parties agreed that information on beer labels constituted commercial speech); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 653 (8th Cir. 2003) (noting that parties agreed that fax advertisements constituted commercial speech).

Plaintiff GFI, which advocates for clean meat (animal meat grown directly from cells) and plant-based alternatives to conventional meat products, engages in advocacy with the public, and expends resources to educate and support plant-based and clean meat companies that do business in Missouri. Ex. 1 ¶¶ 2, 3, 12–15. Commercial speech and advocacy are both types of expression protected by the First Amendment. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 557 (2011); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980) (both applying First Amendment analysis to commercial speech); *Fed. Election Comm'n v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 455–57 (2007) (applying First Amendment analysis to issue advocacy).

### 2.  The Statute is subject to at least intermediate scrutiny.

A content-based law is one that cannot be "justified without reference to the content of the regulated speech" or one that was "adopted by the government because of disagreement with

the message the speech conveys." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) (internal quotation markets and brackets omitted). The Statute at issue here is content based on its face because it prohibits speech (or not) based on what it says. *Id.*

Content-based statutes that create criminal penalties for the exercise of constitutionally protected freedoms—including the right to engage in commercial speech—are indisputably subject to heightened scrutiny. *City of Houston v. Hill*, 482 U.S. 451, 459 (1987); *see also Sorrell*, 564 U.S. at 566. Until recently, when confronted with a challenge to a law that burdened commercial speech, courts uniformly applied the four-part test set out by the United States Supreme Court in *Central Hudson*, which is a variety of "intermediate scrutiny." *See, e.g., Passions Video, Inc. v. Nixon*, 458 F.3d 837, 841 (8th Cir. 2006). But the Supreme Court's 2011 decision in *Sorrell* muddied the waters.

In that case, the Supreme Court implied that laws burdening commercial speech should be evaluated under a standard even more rigorous than *Central Hudson* intermediate scrutiny. 564 U.S. at 564–71 (applying noncommercial precedents to commercial-speech case). The *Sorrell* Court suggested that a content-based law burdening commercial speech should be subjected to strict scrutiny, just like a content-based law burdening noncommercial speech. *Id.* at 571 ("In the ordinary case it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory. . . . however, the outcome is the same [in this case] whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied"); *see also Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 n.4 (4th Cir. 2013) (noting that "the question of whether *Sorrell*'s 'heightened scrutiny' is, in fact, strict scrutiny remains unanswered" but concluding that the challenged law could not withstand intermediate scrutiny so it would "not attempt to answer that question"); *see also Reed*, 135 S. Ct. at 2226 (holding that,

under strict scrutiny, content-based laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests").

If Plaintiffs are substantially likely to prevail under *Central Hudson* intermediate scrutiny, they also necessarily satisfy *Sorrell* strict scrutiny. Because Plaintiffs are substantially likely to prevail under either level of scrutiny, the Court need only analyze the Statute under the less-exacting *Central Hudson* test.

### a. *Central Hudson* threshold question: The government cannot meet its burden of demonstrating that Plaintiffs' speech is false or inherently misleading.

*Central Hudson* comprises four parts: a threshold question and a three-prong test. "With respect to both the threshold question and the three-prong test, the burden is on the government to produce evidence to support its restriction." *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1236 (11th Cir. 2017) (citing *Edenfield v. Fane*, 507 U.S. 761, 770 (1993)). That burden is "not slight" and will not be satisfied by "[m]ere speculation or conjecture." *Ibanez v. Fla. Dep't of Bus. & Prof'l Reg.*, 512 U.S. 136, 143 (1994).

As a threshold matter, the court considers whether the speech at issue is "protected by the First Amendment." *Id.* at 566. Although commercial speech is unprotected if it "concerns unlawful activity" or is "false or inherently misleading," *see, e.g., 1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1056 (8th Cir. 2014), the Supreme Court has confirmed that even "potentially misleading" commercial speech is protected by the First Amendment. *See Ibanez*, 512 U.S. at 146 ("we cannot allow rote invocation of the words 'potentially misleading' to supplant the [government's] burden to 'demonstrate that the harms it recites are real and that

its restriction will in fact alleviate them to a material degree'") (quoting *Edenfield*, 507 U.S. at 771); *Peel v. Att'y Reg. & Disciplinary Comm'n*, 496 U.S. 91, 106–08 (1990).

Unlike inherently misleading speech, *potentially* misleading speech may be regulated only if that regulation passes muster under the remaining three *Central Hudson* prongs. *Peel*, 496 U.S. at 109 ("Even if we assume [the regulated speech] may be potentially misleading to some consumers, that potential does not satisfy the State's heavy burden of justifying a categorical prohibition against the dissemination of accurate factual information to the public.").

Speech is "inherently" misleading only if it is "**inevitably** . . . misleading to consumers." *1-800-411-Pain*, 744 F.3d at 1056 (quoting *Bates v. State Bar of Ariz.*, 433 U.S. 350, 372 (1977)) (emphasis added). This is a high bar. For example, in *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999), the D.C. Circuit Court rejected as "almost frivolous" the government's argument that placing health claims that lacked "significant scientific agreement" on dietary supplements would be inherently misleading to consumers. *See id.* at 655 (characterizing the government's contention that the claims would have "such an awesome impact" as to make it "virtually impossible" for consumers to exercise judgment as nothing more than "paternalistic assumption"). And in *Bloom v. O'Brien*, the District of Minnesota rebuffed the state's argument that a statute prohibiting itemization of "gross revenue tax" on health care bills was directed at inherently misleading speech. The court granted a preliminary injunction in favor of the health care providers who had challenged the statute, rejecting the argument that consumers would inevitably confuse *permissible* revenue tax with *impermissible* sales tax. 841 F. Supp. 277, 281–82 (D. Minn. 1993) (commenting that "a bill which accurately states the amount and the nature of the charge is not inherently misleading").

Plaintiff Tofurky's packaging and advertisements—which accurately convey the nature and contents of its products, *see, e.g.* Ex. 2 ¶¶ 4–8, Attachment—are not inherently misleading. To the contrary, they are objectively true. *See Ocheesee*, 851 F.3d at 1239 ("statements of objective fact . . . are not inherently misleading absent exceptional circumstances") (citing *Peel*, 496 U.S. at 101–02). Tofurky clearly and prominently identifies its products variously as "all vegan," "plant based," "vegetarian," "veggie," and "made with pasture raised plants" on the front of its products' packages. *See* Ex. 2 ¶¶ 4–8, Attachment; *see also Ang v. Whitewave Foods Co.*, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013) (dismissing false-advertising suit against plant-based milk producer that labeled its products "soymilk," "almond milk," and "coconut milk" for implausibility, among other reasons, and finding that plaintiff's argument that any reasonable consumer would "assume the beverages came from cows" because the packages used the term "milk" to "stretch[] the bounds of credulity").

When it enacted the Statute, the government did not rely on any evidence that Plaintiff Tofurky's advertisements and labels—or any plant-based meat producer's marketing materials— are even *potentially* misleading. *See, e.g.*, State's Proposed Answer ¶ 33, ECF No. 20-1; *Edenfield*, 507 U.S. at 771 (striking down ban on certain CPA advertising practices where the government had "present[ed] no studies" or "any anecdotal evidence" that ban directly served government interest). On the other hand, at least one study shows that consumers are *not* confused by plant-based meats' marketing and packaging. *See* Declaration of Keri Szejda (Oct. 29, 2018), GFI Senior Consumer Research Scientist, at ¶ 8, **attached hereto as Plaintiffs' Exhibit 5.**

But *even if* these labels and advertisements were potentially misleading, the government would still bear the burden of demonstrating that the Statute meets all three of the *Central*

*Hudson* prongs. *Peel*, 496 U.S. at 109 ("Even if we assume [the speech at issue] may be potentially misleading to some consumers, that potential does not satisfy the State's heavy burden of justifying a categorical prohibition against the dissemination of accurate factual information to the public."). That is a burden it cannot satisfy.

> **b. First prong of *Central Hudson*: The government cannot meet its burden of demonstrating that it has a substantial interest in suppressing Plaintiffs' speech.**

Once the threshold question is addressed, courts consider whether the state has "assert[ed] a substantial interest to be achieved" by the regulation of commercial speech. 447 U.S. at 564. Here, the legislative sponsors and supporters of the Statute acknowledged publicly—including on the floor of the Missouri House of Representatives—that their interest in enacting the Statute was to protect the animal agriculture industries from competition by plant-based meat producers. *See* Exs. 3 & 4.

The suppression of disfavored speech—or the amplification of favored speech—is not a substantial government interest that can justify a criminal law. *Sorrell*, 564 U.S. at 566. As such, the government has not asserted that the Statute is supported by any substantial government interest sufficient to meet its burden under the first *Central Hudson* prong.

> **c. Second prong of *Central Hudson*: The government cannot meet its burden of demonstrating that the Statute directly and materially advances any substantial interest.**

The government also must prove that the statute "directly and materially" advances a legitimate and substantial interest. *Passions Video, Inc. v. Nixon*, 458 F.3d 837, 842 (8th Cir. 2006) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001)). Assuming that the government argues that it has a substantial interest in protecting consumers from misleading commercial speech, it must show that the Statute directly and materially advances that interest.

A regulation on commercial speech "may not be sustained if it provides only ineffective or remote support for the government's purpose." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 486 (1996) (quoting *Central Hudson*, 447 U.S. at 564) (internal quotation marks omitted)). Instead, the government must demonstrate that the harms it seeks to alleviate are real and that the statutory restriction will alleviate those alleged harms to a material degree. *Edenfield*, 507 U.S. at 762. It cannot justify the Statute based on mere "speculation or conjecture;" instead, it must point to tangible evidence that supports the idea that the restriction will further the state's interest. *Id.* at 770–71.

In *Bolger v. Youngs Drug Products Corp.*, a federal statute prohibited the unsolicited mailing of contraceptive advertisements. 463 U.S. 60, 60 (1983). Arguing that the statute passed muster under the First Amendment, the United States asserted that the law encouraged parents to choose how they wish to talk about sensitive topics like birth control with their children by prohibiting children access to mailings about sensitive topics like birth control. *Id.* at 71. Nonetheless, the Court found that the statute provided "only the most limited incremental support for the interested asserted" because parents typically already have control of what information flows into their mailbox in the first place. *Id.* at 73. Accordingly, the statute did not "directly and materially" advance the government's interest. *Id.* at 73.

Similarly, here the Statute at best "provides only the most limited incremental support" to advance an interest in protecting consumers from confusion about whether plant-based meats are made from animals. Tofurky and other plant-based meat producers *already* distinguish their products from animal meats. *See* Ex. 2 ¶¶ 4–8 and Attachment; Ex. 1 ¶ 4. In addition to listing ingredients and nutritional content, Tofurky prominently identifies its products variously as "all vegan," "plant based," "vegetarian," "veggie," and "made with pasture raised plants." Ex. 2

¶¶ 4–5 and Attachment. In other words, Plaintiff Tofurky is not trying to deceive consumers into believing its plant-based meats are animal products; to the contrary, it wants to make clear that its products are *not* made from animals. Ex. 2 ¶ 7. *Compare Gitson v. Trader Joe's Co.*, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015) ("The reasonable consumer (indeed even the least sophisticated consumer) does not think soymilk comes from a cow. To the contrary, people drink soymilk in lieu of cow's milk."); *see also Painter v. Blue Diamond Growers*, 2017 WL 4766510 (C.D. Cal. May 24, 2017), at *2 (dismissing misleading-advertising claim against almond milk producer and commenting that "[n]o reasonable consumer could be misled by Defendant's unambiguous labeling or factually accurate nutritional statements"); *Pearson*, 164 F.3d at 655 (commenting that to accept the state's argument that inclusion of dubious health claims alongside a disclaimer on dietary-supplement labels was "inherently misleading" would be akin to finding that "consumers were asked to buy something while hypnotized").

Other evidence, including the dearth of consumer complaints about the labels and marketing of plant-based meats and the fact that the Statute is the only one of its kind nationwide (*see* Ex. 4; Ex. 2 ¶¶ 10, 11), also demonstrates that the Statute fails to directly and materially advance a government interest in preventing consumer confusion. *See Ang*, 2013 WL 6492353, at *4 (commenting that it would be "highly improbable" for a reasonable consumer to "believe that veggie bacon contains pork"); *Edenfield*, 507 U.S. at 771 (highlighting the fact that the majority of states had no ban similar to challenged ban and commenting that "[n]ot even [challenger's] own conduct suggest[ed] the government's concerns [were] justified").

In short, consumers are not confused by the marketing and packaging of plant-based meats, and the Statute cannot "directly and materially" solve a problem that does not exist. *Assoc. of Nat'l Advertisers, Inc. v. Lungren*, 809 F. Supp. 747, 756 (N.D. Cal. 1992) ("If First

Amendment scrutiny in the commercial speech arena is to have any bite at all, a legislative body cannot justify its restrictions on commercial speech simply by declaring that marketing claims are misleading"); *accord Ibanez*, 512 U.S. at 146.

    **d.**   **Third prong of *Central Hudson*: The government cannot meet its burden of demonstrating that the Statute is no more extensive than necessary.**

Even if the Court finds that the Statute materially and directly advances some substantial interest, the government also must demonstrate that the Statute is "not more extensive than necessary to serve that interest." *Central Hudson*, 447 U.S. at 566. The Statute must be "reasonable" and "narrowly tailored to achieve the desired objective," and it "cannot curtail substantially more speech than is necessary to accomplish its purpose." *See Lorillard Tobacco*, 533 U.S. at 556; *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1222 (8th Cir. 1998). More specifically, if there are "alternatives to the regulations that directly advance the asserted interest in a manner less intrusive to plaintiffs' First Amendment rights," the government has failed to carry its burden. *Mo. Broadcasters Ass'n v. Lacy*, 846 F.3d 295, 302 (8th Cir. 2017).

Assuming the government has a substantial interest in alerting consumers that plant-based meats come from plants, Missouri could have required all plant-based meat producers to label their products as plant based or vegetarian. *See Central Hudson*, 447 U.S. at 571 (suggesting that having a company print more detailed information on its advertisements is a legitimate and less restrictive alternative to a ban); *Pearson*, 164 F.3d at 657 (holding that disclosure is "constitutionally preferable to outright suppression"). Of course, in addition to listing ingredients and nutritional content, most—if not all—plant-based meat producers *already* identify their products as alternatives to animal meats. To illustrate, Tofurky already conspicuously labels its products as "vegan" and "plant-based." Ex. 2 ¶ 5 and Attachment.

Far from being "not more extensive than necessary," *Central Hudson*, 447 U.S. at 566, the Statute is a broad and blunt instrument that uses the force of the criminal law to reserve common food terms for exclusive use by the government's preferred industries. It is not tailored sufficiently to withstand even *Central Hudson* intermediate scrutiny.

### C. The loss of speech rights is an irreparable harm, and Plaintiffs also satisfy the remaining *Dataphase* factors.

Because the state cannot meet its burdens under *Central Hudson* intermediate scrutiny—let alone *Sorrell* heightened scrutiny—in order to justify the criminalization of Plaintiffs' truthful speech, Plaintiffs are likely to succeed on their First Amendment free-speech claim. When a movant is substantially likely to succeed on its First Amendment claim, the remaining preliminary injunction *Dataphase* factors are generally deemed satisfied. *Swanson*, 692 F.3d at 870. However, the other factors also weigh in Plaintiffs' favor.

The second *Dataphase* factor involves the likelihood of irreparable injury absent an injunction. 640 F.2d at 112. A restriction on a plaintiff's First Amendment rights "unquestionably" constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007), *modified on reh'g*, 545 F.3d 685 (8th Cir. 2008) ("If [appellant] can establish a substantial likelihood of success on the merits of her First Amendment claim, she will also have established irreparable harm as the result of deprivation."). Plaintiffs face the untenable choice of either risking criminal prosecution or upending their advocacy, marketing, advertising, and packaging practices to comply with the Statute. Ex. 1 ¶¶ 8–12; Ex. 2 ¶¶ 12–14, 17. Either way, they face irreparable harm absent an injunction. *Elrod*, 472 U.S. at 373–74; *see also Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016) (discussing types of First Amendment injuries-in-fact that give rise to standing).

"The third Dataphase factor requires a district court to consider the balance between the harm to the movant and the injury that granting the injunction will inflict on other interested parties." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir. 1993) (citing *Dataphase*, 640 F.2d at 114). The harms caused to Plaintiffs by the Statute significantly outweigh the burden an injunction would place on Defendants or the public. Compliance with the Statute would have a severe detrimental impact on Plaintiffs. Ex. 1 ¶ 15; Ex. 2 ¶¶ 15–19. The Statute has caused and continues to cause GFI to divert resources it would otherwise have to invest in other advocacy. Ex. 1 ¶¶ 14–15. Likewise, Tofurky has invested significant time and resources in developing its products and marketing and packaging those products in truthful and non-deceptive ways. Ex. 2 ¶¶ 9, 15, 19. Now the Statute requires that Plaintiff Tofurky either (1) risk criminal prosecution, along with all of the harms that result from being prosecuted, by continuing its current marketing and packaging practices; (2) create specialized marketing and packaging practices just for the state of Missouri, including attempting to police spillover from marketing in nearby states; (3) change its marketing and packaging practices nationwide; or (4) refrain from marketing or selling its products in Missouri at all. Ex. 2 ¶ 14; *see also* Ex. 2 ¶¶ 15–20. Each of these options—some of which may be impossible as a practical matter—significantly burdens Tofurky's commercial speech rights for no legitimate reason.

In addition to this constitutional harm, Plaintiffs face tangible market disadvantages as a result of the Statute. For instance, if Tofurky attempts to comply with the Statute but continues to advertise and market its plant-based meats in other states, it may nonetheless be criminally liable for advertising that spills into Missouri markets. Ex. 2 ¶¶ 16, 17. In addition, retail chains that operate both in Missouri and other states are less likely to carry Tofurky's products if they

18

cannot do so in all of their stores, which may create bad will, as customers may be frustrated with the unavailability of its products in Missouri or puzzled about why its products are called different names and packaged differently. Ex. 2 ¶¶ 18, 19. Given that consumers are not confused by the marketing or packaging of Tofurky's—or others'—plant-based meat products, there is no discernable harm to weigh against the injunction. Thus, the harm to Plaintiffs absent an injunction clearly outweighs the harm to Defendants if an injunction were granted.

Finally, the fourth *Dataphase* factor considers the public interest. Violations of constitutional rights are irreparable injuries, and it is always in the public interest to protect those rights. *Nixon*, 509 F.3d at 485; *accord Rounds*, 530 F.3d at 752. *See also Child Evangelism Fellowship of Minn. V. Minn. Special Sch. Dist. No. 1*, 690 F.3d 996, 1000, 1004 (reversing denial of preliminary injunction and holding that where plaintiff showed "high likelihood of success on the merits of its First Amendment claim," that was "likely enough, standing alone, to establish irreparable harm" and "[t]he likely First Amendment violation further mean[t] that the public interest and the balance of harms (including irreparable harm to [plaintiff]) favor[ed] granting the injunction").

## III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request the Court enter a preliminary injunction and enjoin the enforcement of the Statute, Mo. Rev. Stat. § 265.494(7), during the pendency of this action.

Plaintiffs request that this motion be set for an evidentiary hearing so that they may present additional evidence.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114

Gillian R. Wilcox, #61278
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, MO 64111
Phone: (816) 470-9938

Matthew Liebman, *pro hac vice*
Alene Anello, *pro hac vice*
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, California 94931
Phone: (707) 795-2533

Jessica Almy, *pro hac vice*
The Good Food Institute
1380 Monroe St. NW #229
Washington, DC 20010
Phone: (866) 849-4457

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I certify that on October 30, 2018, I filed a copy of the foregoing electronically with the

Court using the CM/ECF system, which sent notification to counsel.

<u>/s/ Anthony E. Rothert</u>