IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

TURTLE ISLAND FOODS, )
SPC, et al. )
  )
    Plaintiffs, )
  )
  v. ) No. 2:18-cv-4173-FJG
  )
MARK RICHARDSON, )
  )
    Defendant. )

**STATE'S SUGGESTIONS IN RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION .......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.    Missouri does not prohibit labeling plant-based or lab-grown meat as plant-based or lab-grown meat. ............................................................................................................... 4

        A.    Missouri prohibits labeling plant-based or lab-grown meat as conventional meat. ..... 4

        B.    The canon of constitutional avoidance supports this interpretation. ........................... 6

        C.    The First Amendment allows States to prohibit false statements of fact, like Missouri's meat labeling law that prohibits labeling plant-based or lab-grown meat as conventional meat. ..................................................................................................... 8

        D.    Tofurky and the institute may not assert claims for absent third parties ..................... 9

    II.    Tofurky and the institute lack standing and their claims are unripe. ............................. 10

        A.    Tofurky and the institute lack an Article III injury-in-fact. ....................................... 10

        B.    Tofurky and the institute's claims are unripe. ............................................................ 12

    III.    Tofurky and the institute face no threat of prosecution and no risk of irreparable harm. ....................................................................................................................................... 13

    IV.    The balance of the equities and the public interest weigh against enjoining the State's validly enacted meat-labeling law. ................................................................................ 14

CONCLUSION ............................................................................................................................. 14

CERTIFICATE OF SERVICE ..................................................................................................... 15

TABLE OF AUTHORITIES

**Cases**

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) .............................................................. 6

*Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822 (Mo. 1991) ..................................................... 7

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980) 7, 8, 9

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) ................................................................. 11

*Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc) ..................... 3

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ................................................. 14

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568 (1988) ............................................................................................................................................ 7

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ......................................................... 6

*Friedman v. Rogers*, 440 U.S. 1 (1979) .......................................................................................... 9

*Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576 (8th Cir. 2013) ...................................... 9

*Lincoln Credit Co. v. Peach*, 636 S.W.2d 31 (Mo. 1982) ............................................................... 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................... 10

*M & P Enterprises, Inc. v. Transamerica Fin. Servs.*, 944 S.W.2d 154 (Mo. 1997) ..................... 7

*Martin v. Schmalz*, 713 S.W.2d 22 (Mo. App. E.D. 1986) ............................................................. 7

*Maryland v. King*, 567 U.S. 1301 (2012) ..................................................................................... 14

*McFadden v. United States*, 135 S. Ct. 2298 (2015) ...................................................................... 6

*Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864 (8th Cir. 2012) ............. 14

*Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684 (8th Cir. 2003) ................. 13

*Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032 (8th Cir. 2000) ................... 10

*Nken v. Holder*, 556 U.S. 418, 435 (2009) ................................................................................... 14

*Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447 (1978) ............................................................... 9

*Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993) ............................................................ 12

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ........................................................................ 11

*State v. Burnau*, 642 S.W.2d 621 (Mo. 1982) ............................................................................ 7

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) .................................................... 13

*Townley v. Miller*, 722 F.3d 1128 (9th Cir. 2013) .................................................................... 10

*United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483 (2001) ................................ 14

*United States v. Salerno*, 481 U.S. 739 (1987) ......................................................................... 10

*Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515 (1937) ................................................... 14

*Watkins Inc. v. Lewis*, 346 F.3d 841 (8th Cir. 2003) .................................................................. 3

**Statutes**

Mo. Rev. Stat. § 265.494 ............................................................................................................ 4

Mo. Rev. Stat. § 265.496 ............................................................................................................ 1

Mo. Rev. Stat. § 265.497 ............................................................................................................ 1

Mo. Rev. Stat. §265.300 ............................................................................................................. 4

Mo. Rev. Stat. §265.490 ................................................................................................... 4, 5, 8, 9

Mo. Rev. Stat. §265.494 ............................................................................................................. 1

iv

Case 2:18-cv-04173-FJG   Document 37   Filed 12/28/18   Page 4 of 19

INTRODUCTION

Missouri's meat-labeling statute does not do what Tofurky fears it does, and so there is no realistic threat of enforcement against Tofurky or the institute under their theory. The statute does not prohibit labels that describe plant-based or lab-grown products as plant-based or lab-grown meats. Under the plain text of the statute, as well as the Missouri Department of Agriculture's official guidance, the statute prohibits *misrepresenting* non-meat products as meat products—that is, it prohibits labeling plant-based or lab-grown products as conventional meat by not disclosing that the products are plant-based or lab-grown.

STATEMENT OF FACTS

This year, the legislature prohibited "misrepresenting a product as meat that is not derived from harvested production livestock or poultry." Mo. Rev. Stat. §265.494(7). Violation of this meat-labeling statute is a Class A misdemeanor. Mo. Rev. Stat. § 265.496. The legislature charged the Missouri Department of Agriculture with administering the meat-labeling law and referring suspected violations to county prosecutors and the attorney general. Mo. Rev. Stat. § 265.497.

Two days after the statute took effect, the Missouri Department of Agriculture issued guidance describing the new statute and a public statement highlighting its memorandum. Exh. A (public statement); Exh. B, at 1 (guidance). In that memorandum, the Department described the statutory text and internal definitions, and it gave examples of what the statute requires. Exh. B, at 1-2.

Because the statute prohibits "misrepresenting a product as meat that is not derived from harvested production livestock or poultry," Mo. Rev. Stat. §265.494(7), the statute does not prohibit plant-based or lab-grown products, nor prohibit plant-based or lab-grown products that contain truthful labels saying that a meat product is plant-based or lab-grown. Instead, the statute

1

prohibits "misrepresenting a product as meat that is not derived from harvested production livestock or poultry," which means prohibiting plant-based or lab-grown products that lack labels prominently stating that the product is a plant-based or lab-grown meat. Under this common sense understanding of what would misrepresent a product to consumers, the Department explained that the law does not prohibit, and the Department would not refer for prosecution, products whose labels prominently disclose that the meat is plant-based or lab-grown. The statute does not apply to plant-based or lab-grown products that say "that the product is 'plant-based,' 'veggie,' 'lab-grown,' or 'lab-created,' or a comparable qualifier," and "that the product is 'made from plants,' 'grown in a lab,' or a comparable disclosure." Exh. B, at 2.

Just before the statute went into effect and the Department issued this guidance, a plant-based meat producer, Turtle Island Foods, SPC, doing business as The Tofurky Company, and an affiliated advocacy group, The Good Food Institute, Inc., sued the Cole County prosecutor, claiming that this statute infringes on their First Amendment rights. Compl. ¶¶ 97-107. Tofurky's labels include "modifiers like 'veggie,' 'all vegan,' and 'plant based' that indicate that the products do not contain meat from slaughtered animals." *Id*. ¶ 65. Tofurky submitted photographic examples of its labels as an exhibit. Exh. 2. The Good Food Institute advises its partners to use labels like "vegan jerky," "meatless vegan jerky: seitan," "smart bacon: veggie bacon strips," "teriyaki chick'n strips: meat-free," "the ultimate beefless burger," and "beyond meat: beyond beef crumbles, plant-based protein crumbles." *Id*. ¶ 70-71.

Tofurky and the institute claimed that this statute, far from *requiring* plant-based or lab-grown meats to be labeled as plant-based or lab-grown meat, actually *prohibits* labeling plant-based or lab-grown products as a meat product even if its label says that it is plant-based or lab-

2

grown. Neither the Department nor any prosecutor intends to enforce the statute against such truthful labels.

The State takes no position on any label not submitted to the Court, and the Department will analyze any company's label according to the Department's guidance memorandum. To the extent that Tofurky, any of the institute's members, or any other entity have questions regarding their labels, the Department has invited companies to contact it. The Department has further offered to confirm that company labels comply with its interpretation of the law, in order to resolve any possible uncertainty and reduce or eliminate the need for companies to divert resources to ensure compliance.

Because the named Cole County prosecutor declined to defend the constitutionality of this state law, the State of Missouri intervened for that limited purpose, while reserving its sovereign immunity.

## ARGUMENT

An injunction is "an extraordinary remedy," and the "burden of establishing the propriety of an injunction is on the movant." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between the harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Id* (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc*., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).

Tofurky and the institute have failed to meet their burden under each factor.

*First*, they misunderstand the statute they seek to enjoin. The statute does not prohibit accurate labels, as Tofurky alleges its labels are. It only prohibits false or misleading commercial speech, such as when plant-based or lab-grown meat are labeled as conventional meat, with no

3

disclosures. The First Amendment allows the State to prohibit this kind of false statement of fact and this type of misleading commercial speech.

*Second*, because the statute allows Plaintiffs' labels, and because Tofurky faces no realistic risk of enforcement of the statute under a contrary, a-textual interpretation, they have not established Article III standing or ripeness.

*Third*, Tofurky and the institute do not face any irreparable harm because they face no threat of enforcement of their flawed reading of the statute.

*Fourth*, the public interest and the balance of the equities disfavor an injunction because the State will suffer irreparable harm if its law is enjoined.

**I.     Missouri does not prohibit labeling plant-based or lab-grown meat as plant-based or lab-grown meat.**

    **A.     Missouri prohibits labeling plant-based or lab-grown meat as conventional meat.**

Missouri's meat-labeling law prohibits selling plant-based or lab-grown meats without disclosing that they are plant-based or lab-grown meats. Under Section 265.494, "No person advertising, offering for sale or selling all or part of a carcass or food plan shall engage in any misleading or deceptive practices, including (7) … misrepresenting a product as meat that is not derived from harvested production livestock or poultry." Mo. Rev. Stat. § 265.494.

This statute bans labeling a product as conventional meat when it is not in fact conventional meat. The statute defines "misrepresent" to mean "the use of any untrue, misleading, or deceptive oral or written statement, advertisement, label, display, picture, illustration, or sample." Mo. Rev. Stat. §265.490(6). The statute uses the word "meat" to mean meat in the traditional or conventional sense. It defines "meat" as "any edible portion of livestock, poultry, or captive cervid carcass or part thereof," Mo. Rev. Stat. §265.490(5) and §265.300(7). The text of the statute does not criminalize the use of the word "meat" or other words associated with conventional meat when a

4

product is plant-based or lab-grown meat; it just requires the plant-based or lab-grown meat to say that it is plant-based or lab-grown meat.

Tofurky's contrary interpretation of the statute lacks support in the text. Compl. ¶1; Pl. Supp. 6. Tofurky suggests that the statute prohibits "calling a product 'meat'" or "using the word 'meat' to describe a product" made of plants or grown in a lab. The statute does not say that. Instead, it forbids "misrepresenting a product as meat," making clear that the behavior with which the statute is concerned is defined not by the use any particular word or words, but by the result of whatever words are on the label. The statute prohibits labels that suggest that plant-based or lab-grown meat is conventional meat from an animal carcass.

The Missouri Department of Agriculture—the agency which inspects meat and refers violations to prosecutors—understands the statute to mean what the text says. Exh. A (public statement); Exh. B at 1 (guidance). The new law incorporated earlier definitions for meat, livestock, and poultry, and so "the amended Section 265.494(7) prohibits: misrepresenting a product as meat *[any edible portion of livestock, poultry, or captive cervid carcass or part thereof]* that is not derived from harvested production livestock [*cattle, calves, sheep, swine, …*] or poultry *[any domesticate bird intended for human consumption]*." Exh. B; Mo. Rev. Stat. 265.490 (4), (5), (8). Products that label themselves as something other than conventional meat thus "do not misrepresent themselves as meat and thus do not violate 265.494(7)." Exh. B at 2. This includes, for example, labels like Tofurky's that say, just before or after the product name, "that the product is 'plant-based,' 'veggie,' 'lab-grown,' or 'lab-created,' or a comparable qualifier," or "that the product is 'made from plants,' 'grown in a lab,' or a comparable disclosure." Exh. B at 2.

The Department's practical guidelines follow the plain import of the text: that the statute does not criminalize the use of the word "meat" in marketing plant-based or lab-grown food.

Rather, the use of the word "meat" on a plant-based or lab-grown product violates the statute only if it lacks an appropriate qualifier that the product is plant-based or lab-grown. Only then would advertising *misrepresent* a plant-based or lab-grown product as traditional meat.

Tofurky seems to concede that this is the most natural reading of the statute, but it still claims that the statute could be read to prohibit their labels. Pl. Supp. 6; Exh. 1 at 2. It says that it is entitled to judicial relief because it is possible for someone to misunderstand the law and try to prohibit its labels. But any law might be misunderstood, and federal courts do not enjoin state laws under a hypothetical incorrect interpretation, rather than based on what their text objectively requires.

Finally, as a policy matter, labels like those Tofurky submitted to the Court that include full disclosure are not the problem that this law seeks to avert. The legislature may have believed that new products yet to come to market, like lab-grown meat, might try to label themselves as conventional meat. And so it sought to get out in advance on this issue and prevent any labeling problems before they happened.

**B.    The canon of constitutional avoidance supports this interpretation.**

That said, even were there to be doubt about the meaning or effect of the new statute, the canon of constitutional avoidance would still preclude this Court from interpreting the statute to pose a First Amendment problem.

Under both federal and state law, if a law is subject to "competing plausible interpretations," *McFadden v. United States*, 135 S. Ct. 2298, 2307 (2015), the statute must be construed "so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score," *Almendarez-Torres v. United States*, 523 U.S. 224, 237−328 (1998) (quotation omitted). This canon "is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S.

502, 516 (2009). And it "not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). "The courts will therefore not lightly assume that [a legislature] intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it." .*Id*

Under Missouri law, where "one interpretation of a statute results in the statute being constitutional while another interpretation would cause it to be unconstitutional, the constitutional interpretation is presumed to have been intended." *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 838–39 (Mo. 1991). For this reason, "ambiguous statutes that are susceptible to more than one construction should be construed in a manner consistent with the constitution" *M & P Enterprises, Inc. v. Transamerica Fin. Servs.*, 944 S.W.2d 154, 159 (Mo. 1997), *as modified on denial of reh'g* (May 27, 1997). State statutes thus "cannot be held unconstitutional if they are susceptible to *any reasonable construction* supporting their constitutionality." *State v. Burnau*, 642 S.W.2d 621, 623 (Mo. 1982) (emphasis added). In short, if there is any doubt about the statute's meaning, this Court must accept the interpretation that avoids constitutional concerns. *Martin v. Schmalz*, 713 S.W.2d 22, 25 (Mo. App. E.D. 1986) (quoting *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 35 (Mo. 1982)).

As a result, here, if the statute were ambiguous, it must be read to prohibit only false or inherently misleading advertising, such as when plant-based or lab-grown meat is labeled as conventional meat. That sort of untruthful labeling speech is unprotected by the First Amendment and that interpretation thus avoids constitutional concerns. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). In contrast, the interpretation that

7

Case 2:18-cv-04173-FJG   Document 37   Filed 12/28/18   Page 11 of 19

Tofurky says that the statute might bear, Pl. Supp. 6, would require this Court to examine constitutional issues. *Id.*

C. **The First Amendment allows States to prohibit false statements of fact, like Missouri's meat labeling law that prohibits labeling plant-based or lab-grown meat as conventional meat.**

Properly understood, the meat-labeling statute's prohibition on false statements of fact and misleading commercial speech do not apply at all to labels like Tofurky's, and thus the statute comports with the First Amendment.

Not all commercial speech receives First Amendment protection. In commercial speech cases, the Court first "must determine whether the expression is protected by the First Amendment." *Cent. Hudson*, 447 U.S. at 566. The First Amendment does not protect false statements of fact, or inherently misleading speech. *Id.* The Court proceeds to the other parts of the *Central Hudson* test—whether the government interest is substantial, whether the regulation directly advances it, and whether the regulation is no more extensive than necessary—*only if* the First Amendment protects the speech in the first place. *Id.*

Here, this threshold question of *Central Hudson* decides the issue because the statute regulates only false or inherently misleading commercial speech, and so the First Amendment does not apply at all to this speech. The statute prohibits "misrepresenting a product as meat"—as that word is defined in the statute—if the product is not in fact meat as defined in the statute. By defining the forbidden practice as "misrepresenting"—which means using "any *untrue*, *misleading*, or *deceptive* oral or written statement, advertisement, label, display, picture, illustration, or sample," Mo. Rev. Stat. §265.490(6) (emphasis added)—the statute leaves no doubt that it is banning only false or inherently misleading advertising, and that it does not concern merely potentially misleading language. What the statute prohibits is not the use of the word "meat," but the use of advertising that falsely labels a plant-based or lab-grown product as

8

conventional meat or misleads consumers about the product. For the statute to prohibit advertising, it must be "untrue, misleading, or deceptive." Mo. Rev. Stat. §265.490(6). Labels like those Tofurky has submitted to this Court that describe plant-based meat as plant-based meat mislead no one. But someone whose meat product is plant-based or lab-grown, but is labeled like conventional meat without disclosures, would mislead consumers.

Thus, the First Amendment allows Missouri to prohibit labeling plant-based or lab-grown meat as conventional meat from a carcass without disclosing that the meat is planted-based or lab-grown. "[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public.... The government may ban forms of communication more likely to deceive the public than to inform it." *Cent. Hudson*, 447 U.S. at 563 (citing *Friedman v. Rogers*, 440 U.S. 1, 13, 15–16 (1979); *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 464–465 (1978). Because Mo. Rev. Stat. §265.494(7) regulates commercial speech that is false or inherently misleading, the *Central Hudson* inquiry ends at the threshold question and the law is constitutional. 447 U.S. at 566 (1980). But, even if the other factors were to apply, the law would still be constitutional because it directly serves an important interest in truthful labeling of meat products by requiring labels to avoid misrepresenting plant-based or lab-grown meat as conventional meat from a carcass.

For these reasons—because the statute allows their particular speech—the as-applied challenges fail.

**D.**    **Tofurky and the institute may not assert claims for absent third parties.**

Tofurky and the institute also purport to bring facial challenges to the law. But they ignore the traditional analysis for a facial attack, in which a statute will be upheld if it has any lawful applications. "Facial challenges are disfavored because they often rest on speculation and raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Iowa Right*

*to Life Comm., Inc. v. Tooker*, 717 F.3d 576, 588 (8th Cir. 2013) (alterations adopted) (citation omitted). A challenger asserting a facial challenge thus "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). That demanding standard makes a facial challenge "the most difficult to mount successfully." *Id*. And here, the statute's application to plant-based or lab-grown meat, whose label does *not* disclose that the meat is plant-based or lab-grown, presents an easily-identifiable circumstance in which Missouri's labeling law would be valid.

Nor do Tofurky and the institute raise over-breadth or vagueness challenges in their motion, under which they might argue that the statute harms *others* even if it does not harm *them*. Nor do they pursue another due process challenge or their dormant commerce clause challenge in their motion. With no vagueness, overbreadth, or other third-party claims, any chill on speech caused by an incorrect reading of the statute is thus not before the court.

## II.     Tofurky and the institute lack standing and their claims are unripe.

Because neither the Department nor any prosecutor interpret the law contrary to its plain limited import, Tofurky and the institute's claims are not justiciable. At filing, "plaintiffs must make a clear showing of each element of standing." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013). In addition, claims must be ripe, and courts stay their hand until an "administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000).

### A.     Tofurky and the institute lack an Article III injury-in-fact.

Tofurky and the institute have standing only if they can prove an injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."
10

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotation marks and citation omitted). Standing requires "that the alleged injury is not too speculative for Article III purposes"—the injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citation omitted).

Plaintiffs' allegations that the statute exposes them to substantial risk of prosecution and forces them to divert resources are purely "conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. Plaintiffs' alleged injuries thus lack the concrete, particularized nature of an injury-in-fact. *Id*. And, in the absence of any vagueness, overbreadth, or other third-party claims, for any chill on speech to be justiciable as an injury-in-fact, it must be an objectively reasonable chill based on the actual sweep of the statute.

Plaintiff's standing argument, that the statute prevents them from accurately labeling their products, Compl. ¶¶ 42-43, 66-67; is based on a flawed interpretation of the statute. The statute only prohibits misrepresenting plant-based or lab-grown meat products as traditional meat. But as Plaintiffs themselves allege, Tofurky's labels are not misleading. *Id*. ¶67. Tofurky does not misrepresent its products as conventional meat; it prides itself on *distinguishing* its products from conventional meat. *Id*. ¶35. Tofurky already discloses that its products are not traditional meat. *Id*. ¶65. Given these representations by Tofurky, it need not do anything to comply with the statute.

Similarly, the institute's claim that the statute has caused it to divert resources to educating its partner companies on compliance with the new Missouri law is a hollow fear, if not a self-imposed burden. The institute's partner labels already distinguish their products from traditional meat and the institute already advises them that this is enough, Compl. ¶¶ 70-71. If true, these companies need do nothing to comply with the new statute. Thus, if the institute has diverted

resources, it is not because the statute required it but because of their own atextual reading of the statute.

### B. Tofurky and the institute's claims are unripe.

In the same vein, because the law does not say what they fear it says, and because Tofurky and the institute face no threat of enforcement of the law in the way that they fear, their claims are also not ripe. Indeed, the regulatory agency charged with monitoring and recommending enforcement of the statute's provisions issued a guidance document confirming the statute's plain import and guaranteeing safe harbor from state enforcement referrals. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, n. 18 (1993).

Neither the Department nor a prosecutor has tried to enforce the statute in the way that the plaintiffs fear, or even given any indication that they plan to do so. In fact, the Department has said it will *not* enforce the law that way. See Exh. B. Communications between the Department and individual companies show that this is the Department's policy in practice as well. Exh. C & D (emails with Beyond Meat). With a guidance memorandum in place expressing the Department's commitment to the law's plain and constitutionally sound meaning—opinions that are highly-persuasive authority about the law's proper interpretation from the entity that has expertise in this area and that has the specific responsibility of administering the law—these challenges are not ripe for adjudication. Far from creating uncertainty about the law to muddy the waters, the Department has provided clarity about the law's effect on the plaintiffs and freed them from even subjective speculative uncertainty about its scope. Any further advice from this Court about the statute would be an advisory opinion, and no matter the comfort that opinion would give the parties, it is not within this Court's power, absent a live dispute.

Rather than entertain this case now, with zero chance of enforcement under the theories plaintiffs hypothesize, it would be better to consider this case later if any threat of enforcement

materializes. With no evidence of enforcement, delay will not cause hardship to the parties, and adjudication is premature, because the plaintiffs have not sufficiently focused their claims and made them fit for review. *Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 694 (8th Cir. 2003). Their claims would benefit from "further factual development." *Id.* at 692–93. And it is not for this Court to discard this prudential safeguard. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014).

### III. Tofurky and the institute face no threat of prosecution and no risk of irreparable harm.

For the same reasons, neither Tofurky nor the institute will suffer irreparable harm without an injunction: the statute does not prohibit their labels, and they face no realistic threat of enforcement of a contrary reading of the statute.

The alleged irreparable harms that Plaintiffs list in their brief all depend on the idea—founded on a strained and atextual interpretation of the statute—that the statute criminalizes their current advertising practices. The institute claims that the statute has caused it to divert resources to advising companies about how to comply with the new statute. Pl. Supp. 18. And Tofurky says that it must choose between risking criminal prosecution, or changing its business practices. *Id.* They also point to market disadvantages that they would suffer from some alternatives. *Id.*, at 18-19. But if the statute does not prohibit current truthful advertising, then it does not cause the institute to divert resources because there are no new requirements for those partners to implement. And if Tofurky's current marketing and branding practices do not fall under the statute, Tofurky need change nothing.

Simply put, the statute does not do what they say it does. Exh. B & D. It prohibits misleading consumers into believing a product is traditional meat if the product is not traditional meat. But Tofurky and the institute's partners pride themselves on labeling their products in

13

truthful and non-misleading ways that distinguish them from meat. Compl. ¶¶ 34-36, 39, 63-65, 70-71.

IV.     **The balance of the equities and the public interest weigh against enjoining the State's validly enacted meat-labeling law.**

If anything, an injunction would irreparably harm the State by invading its sovereign authority to enact and enforce a legal code. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quotation omitted).

The public interest thus disfavors enjoining this law. A statute like Mo. Rev. Stat. 265.494(7) "is in itself a declaration of the public interest" and by definition does not support the injunction. *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937). The people of Missouri, through their duly elected representatives, decided to prohibit companies from falsely advertising alternative meat products as conventional meat. The public interest is best represented by this "policy choice, articulated in a statute, as to what behavior should be prohibited." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001). The public interest thus merges here with consideration of harm to the state. *Nken v. Holder*, 556 U.S. 418 (2009); *see also, e.g., Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). And "a high level of deference is appropriate because this is a duly enacted statute." *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 877 (8th Cir. 2012) (en banc).

## CONCLUSION

This Court should deny the Plaintiffs' request for a preliminary injunction and dismiss the lawsuit for lack of jurisdiction. In the alternative, any injunction against the statute should be limited to the parties and conduct here.

This Court may decide this motion on argument alone. But if this Court holds an evidentiary hearing, the State should have an opportunity to present evidence, and the Court should provide for mutual advance disclosure of any proposed evidence.

Respectfully submitted,

**JOSHUA D. HAWLEY**
Attorney General

*/s/Julie Marie Blake*
Julie Marie Blake, #69643
Deputy Solicitor General
Peter A. Houser, #71278
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102-0899
(573) 751-1800
(573) 751-0774 (fax)
Julie.Blake@ago.mo.gov
Peter.Houser@ago.mo.gov

*Attorneys for State of Missouri*

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, to be served on all counsel of record.

*/s/ Julie Marie Blake*

15
Case 2:18-cv-04173-FJG   Document 37   Filed 12/28/18   Page 19 of 19