IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| Turtle Island Foods, SPC, doing business as ) | | |
| The Tofurky Company; and ) | | |
| The Good Food Institute, Inc., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | No. 18-cv-4173-FJG | |
| ) | | |
| Mark Richardson, in his official capacity as ) | | |
| Cole County Prosecuting Attorney and ) | | |
| on behalf of all Missouri Prosecuting Attorneys, ) | | |
| ) | | |
| Defendants. ) | | |

**REPLY TO SUGGESTIONS IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

The State essentially argues that the law at issue is constitutional because the State promises it will be used responsibly. Even if the State had control over the putative class of county prosecuting attorneys, which it does not, such a promise could not cure the facial constitutional infirmities of a speech-suppressive, content-based law. *See United States v. Stevens*, 559 U.S. 460, 480 (2010).

**I.  Nothing in the nonbinding guidance from the Department of Agriculture saves this unconstitutional criminal law directed at constitutionally protected speech.**

On its face, the law (Statute) applies broadly to any "oral or written statement," including advertisements and labels, as well as displays, pictures, and illustrations. Mo. Rev. Stat. § 265.490(6). The State acknowledges that the Statute criminalizes "misrepresenting a product as meat that is not derived from harvested production livestock or poultry." But the State elides the fact that the law defines "misrepresenting a product as meat" as a "misleading or deceptive practice" without explaining what speech constitutes "misrepresenting" a product as meat. It

1

likewise does not explain what speech (*e.g.*, disclosures, qualifiers, terms, or images) might protect producers from prosecution under the law. In fact, the law says nothing at all that would limit prosecutorial discretion in determining when a plant-based meat or lab-grown meat producer's expressive activity amounts to "misrepresenting a product as meat."

The State's promise to use this new criminal law responsibly is premised on the nonbinding guidance issued by the Department of Agriculture. Nothing in that agency's guidance is binding *even on the Department of Agriculture*, much less county prosecutors, who are the parties responsible for prosecuting misdemeanors in Missouri.[1] *See* Mo. Rev. Stat. § 56.060; Mo. Rev. Stat. § 265.220. Although the Department of Agriculture is indeed required to report suspected violations of the Statute to county prosecutors, *see* Mo. Rev. Stat. § 265.497, there is no restriction on when a prosecuting attorney may initiate a prosecution independent of a report. Instead, the law simply tasks Missouri's 115 county prosecutors with determining when a product is "misrepresenting" itself as meat from a slaughtered animal. Prosecutors need only determine that the use of any word, image, advertised use for the product, the product's appearance, or even its location within a store (or a combination thereof) means the producer is "misrepresenting" the product as meat. For producers already in—or considering coming to—the market in Missouri, the agency's nonbinding guidance fails to provide any legal certainty about what can be said and not said without risk of prosecution.

Indeed, the State offers no citation or evidence for its statement that "neither the Department [of Agriculture] ***nor any prosecutor*** intends to enforce the statute against" truthful

---

[1] The State has repeatedly taken the position that even the Attorney General cannot prosecute misdemeanors. *See, e.g.*, *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (holding Missouri Attorney General has Eleventh Amendment immunity against a suit that "does not seek to enjoin a statute that subjects him to imminent prosecution by the attorney general"); *Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005).

labels on plant-based meats (emphasis added). The extremely broad plain language of the Statute—even setting aside the explicit intent of legislators supporting the Statute's enactment[2]—belies the State's claim that it can ensure no prosecutor intends to prosecute truthful labels on plant-based and lab-grown meats. On its face, the Statute applies to truthful speech, covers labels and marketing of *both* plant-based meats and lab-grown meats, and prohibits even *existing* labels of plant-based meats and their usage of "meat" terminology[3] (not to mention other forms of commercial speech, including images in marketing and packaging[4]).

In short, the State asks the Court to ignore the plain language of a newly enacted criminal statute and instead rely on the nonbinding guidance of an agency that cannot control prosecutions initiated under that statute. The State's assurance that the law will be enforced differently from what it says on its face is "is pertinent only as an implicit acknowledgment of the potential constitutional problems with a more natural reading." *Stevens*, 559 U.S. at 480.

---

[2] That intent, to protect the state's cattle, pork, and chicken industries, is consistent with the broad plain language of the Statute itself. *See, e.g.*, *Third Reading of Senate Bills in House* (May 17, 2018) (Rep. Knight: "all we're trying to do is basically ***just protect our meat industry***"; Rep. Razer: "***We have to protect our cattle industry***, our hog farmers, our chicken industry.") (ECF-24-3); S. Brown, *How Missouri Began to Tackle Fake Meat: Missouri Sen. Sandy Crawford*, DROVERS (May 31, 2018) (quoting Sen. Crawford as stating that the beef industry trade group approached her "with an idea for a bill . . . and that bill was what we dubbed the fake meat bill") (ECF No. 24-4). In fact, the U.S. Cattlemen's Association—the national counterpart to the Missouri Cattlemen's Association, which championed the Statute— crafted a petition to USDA requesting the agency prohibit plant- and cell-based meats from using the terms "meat" and "beef," https://www.fsis.usda.gov/wps/wcm/connect/e4749f95-e79a-4ba5-883b-394c8bdc97a3/18-01-Petition-US-Cattlement-Association020918.pdf?MOD=AJPERES (attached hereto as Plaintiffs' Exhibit 6).

[3] Sen. Munzlinger: "this bill is that a product that is derived from a non-animal sources . . . **cannot use the term 'meat.'**" Senate Bills for Perfection (March 7, 2018). Rep. Knight "This bill is basically just trying to protect the integrity of the meat industry . . ." Third Reading of Senate Bills in House (May 17, 2018). Rep. Houghton: **"We've got companies and individuals that want to rename what fruits and vegetables are and call them 'meat.'"** Third Reading of Senate Bills in House (May 17, 2018). *Compare with* Def. Brief at 8–9: ("The text of the statute does not criminalize the use of the word 'meat' . . . it just requires the plant-based or lab-grown meat to say that it is plant-based or lab-grown meat.") ("the behavior with which the statute is concerned is defined not by the use [of] any particular word or words . . .").

[4] Rep. McCreery: "[W]hen somebody buys meat made out of soy, you think that they're dumb enough to think that it's actually meat from a slaughtered animal?" Rep. Houghton: "I'm assuming that you've seen the pictures of the products that they produce? . . . And there's ***pictures of cattle and chickens on it! . . . That is a misrepresentation. That's what we're trying to stop***." Third Reading of Senate Bills in House (May 17, 2018).

## II. Nothing in the doctrine of constitutional avoidance can save this criminal law, which is directed on its face at suppressing constitutionally protected speech.[5]

Contrary to the State's argument, the doctrine of constitutional avoidance cannot save the Statute. Constitutional avoidance applies only where a law has some lawful interpretation *on its face*—it cannot be used to rewrite a statute. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them." *Clark v. Martinez*, 543 U.S. 371, 385 (2005). "In the absence of more than one plausible construction, the canon simply has no application." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (quotation marks omitted). As the Supreme Court recently confirmed, "a court relying on that canon still must interpret the statute, not rewrite it." *Id.* at 836. The Court has thus rejected the use of constitutional avoidance to re-write and save a speech-suppressing statute:

> We will not rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place.

*Stevens*, 559 U.S. at 481.

Despite this guidance, the State invites the Court to substitute the Department of Agriculture's nonbinding memorandum for the Statute as written. But in so doing, the State asks the Court to assume that the Statute does nothing more than require plant-based and lab-grown meats to use *label disclosures*. The law is in no way limited to products without disclosures. On its face, the Statute prohibits any "oral or written statement" that could be construed as "misrepresenting a product as meat." Accepting the State's reading would require the Court to

---

[5] Plaintiffs will not repeat the arguments concerning their likelihood of success on the merits, the first and most prominent of the *Dataphase* factors in First Amendment cases, *see Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). *See* ECF No. 24 at 7-19.

ignore the plain text of the law, create limits on the scope and type of speech that is prohibited, and add specific language about label disclosures—essentially rewriting the Statute. *See Jennings*, 138 S. Ct. at 834 (reversing statutory-construction decision which "all but ignored the statutory text"). Even if the Court could rewrite the Statute in the manner the State suggests, the law would remain unconstitutional.

### III.    The Statute suppresses truthful, non-misleading speech.

Because it is directed at suppressing constitutionally protected speech, the law is subject to (at least) the *Central Hudson* commercial speech test. "Under a commercial speech inquiry, it is the State's burden to justify its content-based law as consistent with the First Amendment." *Sorrell v. IMS Health*, 564 U.S. 552, 571–72 (2011). Under the *Central Hudson* test, the State must prove that its articulated justification for a speech restriction rests on more than "[m]ere speculation or conjecture" and that "the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993).

Because the State is unable to meet this burden, it instead attempts to insulate the Statute from *Central Hudson* analysis entirely. It takes the position that the Statute does nothing more than regulate false or inherently misleading commercial speech. But this argument is circular: if the Statute is rewritten and subjected to a restrictive construction applying only to false label disclosures,[6] then yes—it would escape *Central Hudson*. But if the Statute is interpreted *as written*, it encompasses truthful, non-misleading speech, including the speech of Plaintiffs.

---

[6]     Indeed, the state's brief is inconsistent as to what kinds of disclaimers would be sufficient to exempt a label from the reach of the law — whether *both* a qualifier and disclosure (p. 2, quoting enforcement memo), *only* a qualifier (pp. 5-6, "the use of the word 'meat' on a plant-based or lab-grown product violates the statute only if it lacks an appropriate qualifier that the product is plant-based or lab-grown"), or *either* a qualifier or a disclosure would be necessary (p. 5, in reference to Tofurky's labels).

**IV.     The Statute suppresses truthful, non-misleading speech.**

In skipping *Central Hudson* analysis and instead relying on the contention that Plaintiffs' speech is not the type of speech prohibited by the Statute, the State fails to offer any rationale for its speech restriction—let alone demonstrate that a real and substantial government interest justifies that speech restriction. Instead, the State devotes a single sentence to address its asserted interest—the "*interest in truthful labeling of meat products by requiring labels to avoid misrepresenting plant-based or lab-grown meat as conventional meat from a carcass*." Def. Br. at 13 (emphasis added). It is not clear that this is a substantial interest. But presuming it is, the Statute suppresses far more speech than necessary to advance it.

Long before the challenged amendment, Mo. Stat. § 265.494 *already prohibited* "misleading or deceptive practices." The Statute cannot be justified by a simple desire to outlaw deception. A state cannot justify its suppression of disfavored speech by the professed desire to outlaw something already outlawed. *See Animal Legal Def. Fund v. Reynolds*, No. 417CV00362JEGHCA, 2019 WL 140069, at *8 (S.D. Iowa Jan. 9, 2019) (striking down state law targeted at those who challenge the livestock industry, and noting that the state could have relied upon existing law "to protect its proffered interests without chilling speech"). By adding the contested language, the amendment decrees that presenting a product as meat is *per se* "misleading or deceptive," unless the product comes from a slaughtered animal. The Statute thereby seeks to move the question of whether a practice is deceptive from the realm of fact— where we ask whether consumers are *actually deceived*—into the realm of law—where disfavored speech is statutorily declared deceptive. That violates the First Amendment, particularly where there is no evidence whatsoever that there is any deception. *See, e.g., Painter v. Blue Diamond Growers*, No. 17-55901, 2018 WL 6720560, at *1 (9th Cir. Dec. 20, 2018).

Courts must not "turn away if it appears that the stated interests are not the actual interests served by the restriction." *Edenfield*, 507 U.S. at 768. Legislator comments about protecting the animal agriculture industry, *see supra*, make clear the State's assertion of interest here is not what motivated the General Assembly to enact this restriction on speech. But the desire to divert customers from one form of lawful business to another is not a legitimate state interest that justifies a restriction on commercial speech. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 514 (1996); *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 374 (2002). ("Attempting to control the outcome of the consumer decisions . . . by restricting lawful commercial speech is not an appropriate way to advance a state interest in protecting consumers.").

Even if the State had identified a sufficiently substantial government interest, it still would have to show that the restrictions "directly and materially advance the asserted government interest." *Missouri v. Am. Blast Fax*, 323 F.3d 649, 656 (8th Cir. 2003). It has made no such showing here. In fact, all the State has attempted to show is that the Statute does nothing. Simply reiterating the State's longstanding prohibition against misleading meat labeling does not directly and materially advance any interest at all.

The law is clear that, if there are "alternatives to the regulations that directly advance the asserted interest in a manner less intrusive to plaintiffs' First Amendment rights," the government has failed to carry its burden. *Mo. Broadcasters Ass'n v. Lacy*, 846 F.3d 295, 302 (8th Cir. 2017). Here, the State acknowledges the existence of narrower restrictions when it asks the Court to rewrite the Statute to apply solely to labels and to specific statements or omissions. But the Court cannot rewrite the statute, and—as written—the Statute is a broad restriction on

7

speech. The State has failed to show that the Statute directly and materially advances a substantial government interest without being more extensive than necessary.

## V. Plaintiffs adequately show Article III standing, and their claims are ripe for review.

### a. Plaintiffs face irreparable harm absent injunction.

The State does not contest that *if Plaintiffs' speech is prohibited* under the Statute, they (1) will in fact experience irreparable harm absent an injunction, (2) have adequately alleged Article III standing, and (3) present claims that are ripe for review. That is true even if Plaintiffs' speech is even "arguably . . . proscribed by [the] statute' they wish to challenge." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 303 (1979)).

Any threat to First Amendment rights necessarily constitutes irreparable harm. *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015). The State attempts to avoid this issue by proclaiming that the Statute allows Plaintiffs' labels, and Tofurky faces "no realistic risk of enforcement." Leaving aside the fact that a world of conduct beyond its labels (including all of Tofurky's marketing campaigns) leaves it at risk of prosecution under the law, Tofurky has shown it realistically fears enforcement. Pls' Motion at 17-19. As with any government-restricted speech, the balance of harms here favors the protection of constitutional rights.

### b. Plaintiffs have Article III standing.

The State conflates standing and merits. It contends that Plaintiff Tofurky lacks standing because it faces no actual or imminent threat of prosecution according to the Department of Agriculture's nonbinding interpretation of the Statute. Again, assurances in the State's brief or in the memorandum are not binding on either the State or any one of the 115 county prosecutors tasked with enforcing the state's misdemeanor laws.

When a plaintiff faces actual or imminent threat of prosecution—as Tofurky does here, by the fact that the State enacted this new criminal law—this unquestionably constitutes a concrete and particularized injury-in-fact sufficient to confer standing. Plaintiffs need not have been actually prosecuted or threatened with prosecution. *St. Paul Area Chamber of Commerce v. Gaertner,* 439 F.3d 481, 487 (8th Cir. 2006). Rather, the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute. Self-censorship can, itself, constitute injury in fact. *See Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 393 (1988); *Babbitt v. Farm Workers*, 442 U.S. 289, 298, (1979); *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011).

### c. Plaintiffs' claims are ripe for review.

The State also contends that Plaintiffs' claims are not ripe because the Statute has not been enforced since its enactment about four months ago.[7] The Supreme Court has repeatedly found that plaintiffs have standing to bring pre-enforcement First Amendment challenges to new criminal statutes even when those statutes have *never* been enforced. *See, e.g., Babbitt,* 442 U.S. at 302; *Doe v. Bolton,* 410 U.S. 179 (1973). Speech can be reasonably chilled by a law without any regular enforcement. *281 Care Comm.*, 638 F.3d at 628 (finding plaintiffs were reasonably chilled by law amended "fewer than five years" before suit was filed, even though there had been no enforcement since that amendment). Courts have also refused to dismiss cases where a governmental body ceased and promised not to resume a wrongful practice, because "[p]resent intentions may not be carried out," and "it is not certain that changes in leadership or philosophy might not result in reinstitution of the [challenged] policy." *Phillips v. Penn. Higher Educ. Assistance Agency,* 657 F.2d 554, 569–70 (3d Cir.1981), *cert. denied,* 455 U.S. 924 (1982). The

---

7     In fact, even the Department of Agriculture memorandum suggests it will begin referring cases for prosecution this month.

9

concern about enforcement is particularly acute where the State cannot even bind the individual county prosecutors to a promise of non-enforcement. Because the law creates a criminal offense, is newly enacted, and on its face arguably targets precisely the speech Plaintiffs want to engage in, their claim is ripe. *See Susan B. Anthony List*, 573 U.S. at 162.

## Conclusion

Because Plaintiffs are likely to succeed on the merits of their First Amendment claim and the other *Dataphase* factors weigh in their favor, this Court should issue a preliminary injunction and enjoin the enforcement of the Statute, Mo. Rev. Stat. § 265.494(7), during the pendency of this action.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114

Gillian R. Wilcox, #61278
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, MO 64111
Phone: (816) 470-9938

Matthew Liebman, *pro hac vice*
Amanda M. Howell, *pro hac vice*
Alene Anello, *pro hac vice*
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, California 94931
Phone: (707) 795-2533

Jessica Almy, *pro hac vice*
The Good Food Institute
1380 Monroe St. NW #229
Washington, DC 20010

Phone: (866) 849-4457

**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I certify that on January 18, 2019, I filed a copy of the foregoing electronically with the Court using the CM/ECF system, which sent notification to counsel.

/s/ Anthony E. Rothert