# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| TURTLE ISLAND FOODS, SPC, ET AL., | ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 2:18-CV-04173 ) |
| MARK RICHARDSON, | ) ) |
| Defendant. | ) ) |

## ORDER

Currently pending before the Court is plaintiffs' Motion for Preliminary Injunction (Doc. # 23); plaintiffs' Motion to Certify Class (Doc. # 31); Joint Motion to Amend Scheduling Order (Doc. # 35), Motion to Withdraw as Attorney (Doc. # 36) and Joint Motion to Stay Scheduling Order (Doc. # 47).

### I. BACKGROUND

On August 28, 2018, Mo.Rev.Stat. § 265.494 went into effect. This statute states in part:

> No person advertising, offering for sale or selling all or part of a carcass or food plan shall engage in any misleading or deceptive practices, including, but not limited to, any one or more of the following:
>
> . . .
>
> (7) Misrepresenting the cut, grade, brand or trade name, or weight or measure of any product, or *misrepresenting a product as meat that is not derived from harvested production livestock or poultry.*

Id.(emphasis added).

The statute defines "meat" as: "any edible portion of livestock, poultry, or captive cervid carcass or part thereof." Mo.Rev.Stat. §265.300(7). The term "misrepresent" in the

statute is defined as "the use of any untrue, misleading or deceptive oral or written statement, advertisement, label, display, picture, illustration or sample. Mo.Rev.Stat. § 265.490(6). Pursuant to the statute any person who violates any portion of Mo.Rev.Stat. § 265.494 is guilty of a class A misdemeanor. Mo.Rev.Stat. §265.496. The punishment for a class A misdemeanor is imprisonment for up to one year and a fine up to $1,000.

Plaintiffs, the Good Food Institute "GFI" (a non-profit advocacy organization) and Tofurky (a plant-based meat producer whose products are marketed and sold in stores in Missouri) filed a Complaint against Mark Richardson, in his official capacity as the Cole County Prosecuting Attorney and on behalf of all Missouri Prosecuting Attorneys challenging the constitutionality of the statute referenced above. Plaintiffs allege that the statute violates their First Amendment rights, violates the Dormant Commerce Clause and violates their due process rights. Plaintiffs seek a preliminary and permanent injunction preventing enforcement of the statute, a declaration that the statute is unconstitutional on its face and as applied to plaintiffs and an award of costs and attorneys' fees.

In their Complaint, plaintiffs state that "plant-based meats" are foods that approximate the texture, flavor, and appearance of conventional meats produced from livestock. Plant-based meats are typically made from soy, tempeh, wheat, jackfruit, textured vegetable protein and other vegan ingredients. Plaintiffs use the term "Clean meats" to refer to meat made of muscle tissue cultured *in vitro* from animal cells. Clean-meat producers add nutrients like salts and sugars to animal cells, which grow into muscle tissue that approximates conventional meat. (Complaint, ¶¶ 14-15).

2

The labels and marketing materials of Tofurky, as well as the plant-based meat companies that GFI advocates for, all clearly indicate their products are plant based, meatless, vegetarian or vegan. (Complaint, ¶ 34). Tofurky produces, markets and sells the following products which are clearly labeled as plant based, vegan or vegetarian and using descriptive terms including: "slow-roasted chick'n;" "deli slices" in varieties such as "smoked ham" and "bologna" "veggie burgers;" "hot dogs," "sausages," "grounds in varieties including "DIY chorizo," "DIY breakfast sausage," "DIY Italian sausage," "chorizo" and "ground beef style," and "ham roast." Plaintiffs state that the labels for these products include modifiers like "veggie," "all vegan," and "plant based" that clearly indicate that the products do not contain conventional meat from livestock production animals. (Complaint ¶ ¶63-64). Tofurky states that because its labels include terms which are also applied to conventional meat like "kielbasa" "hot dogs" "ham roast" "burgers" and "bologna," it reasonably fears prosecution under the statute. GFI states that its partners also market products as meat analogues and use meat and meat related terminology in the labeling of their products such as "vegan jerky" "meatless vegan jerky" "seitan" "smart bacon: veggie bacon strips" "teriyaki chick'n strips: meat-free" "the ultimate beefless burger" and "beyond meat: beyond beef crumbles and plant-based protein crumbles". GFI states that its partners who use these terms on their labels and marketing materials face a credible fear of prosecution for their speech. (Complaint ¶¶ 70-72). Plaintiffs allege that the statute is designed to and will significantly disadvantage Torfurky and the companies the GFI works with because it will restrict how they can market, advertise and sell their products in the marketplace. Plaintiffs allege that the statute prevents marketing products as meat analogues or

3

using meat terminology in truthful and non-misleading ways (Complaint ¶ 79). Tofurky states that compliance with the statute would have a severe detrimental impact on its nationwide marketing and packaging of its products. (Complaint ¶ 81).

Plaintiffs initially named Mark Richardson as the proposed class representative because at the time he was the Cole County Prosecuting Attorney. However, in January 2019, Richardson left office and the new prosecutor for Cole County is now Locke Thompson. Plaintiffs aver that there are 116 Prosecuting Attorneys in Missouri and that these prosecuting attorneys have the authority to enforce the statutory provisions at issue here and may prosecute any alleged offenders. (Complaint ¶¶ 91-92).

## II. STANDARD

Under Fed.R.Civ.P. 23(a), the Court considers the following prerequisites and certifies a class action only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protects the interests of the class.

In determining whether a preliminary injunction should be issued, the Court in Chlorine Institute, Inc. v. Soo Line R.R., 792 F.3d 903 (8th Cir. 2015), stated:

> In considering whether to issue a preliminary injunction, the district court must consider four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties [ ]; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir.1981)(en banc). "The burden is on the movant to establish the need for a preliminary injunction. . . ." DISH Network Serv. L.L.C. v. Laducer, 725 F.3d 877, 881 (8th Cir. 2013)(internal quotation marks omitted).

4

Id. at 914.

## III. DISCUSSION

### A. Motion to Certify Defendant Class

In Morris v. Moon Ridge Foods, LLC, No. 18-CV-03219-SRB, 2019 WL 4197605 (W.D.Mo. Sept. 4, 2019), the Court discussed what must be show in order to certify a class action:

> Class certification is governed by Rule 23, and a proposed class must satisfy all four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). Comcast Corp. v. Behrend, 569 U.S. 27, 32 (2013); Blades v. Monsanto Co., 400 F.3d 562, 568-69 (8th Cir. 2005). Rule 23(a) requires the proponent of a class action to show: 1) "the class is so numerous that joinder of all members is impracticable" (numerosity); 2) "there are questions of law or fact common to the class" (commonality); 3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and 4) "the representative parties will fairly and adequately protect the interests of the absent class members" (adequacy). District courts must engage in a "rigorous analysis" to determine whether "the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982). If the Rule 23(a) prerequisites have been met, a class action may be maintained only if at least one Rule 23(b) provision is satisfied.

**1. Numerosity**

Plaintiffs state that there are 115 Prosecuting attorneys in Missouri and that this is sufficient to satisfy the numerosity requirement of Fed.R.Civ.P. 23. The State of Missouri does not challenge the numerosity prerequisite, so the Court finds that this requirement is satisfied.

**2. Commonality**

Plaintiffs state that the sole question in this case is common to the proposed defendant class – whether Mo.Rev.Stat. § 265.494(7)'s requirement prohibiting vegetarian-meat sellers from using "meat" or meat-related terms is constitutional.

5

Plaintiffs state that each Prosecuting Attorney must enforce the provision under the same statutory procedure and thus the question of constitutionality is common to all members of the class. The State argues that the proposed class fails the commonality test because the proposed question which plaintiffs have identified is improper as the statute does not forbid the use of certain words or terminology, rather it forbids *misrepresenting* a product as meat that is not derived from harvested production livestock or poultry. In Wal-Mart v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), the Court noted that commonality is "the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" Id. at 349. The Court continued that the "common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Id. at 350. In this case, the Court finds that the commonality requirement is met, because all of the prosecuting attorneys share the common defense that the statute is constitutional and a determination regarding the constitutionality of Mo.Rev.Stat. § 265.494(7) would apply to all the prosecuting attorneys and affect whether they could prosecute actions under that statute or not.

### 3. Typicality

Typicality is met when the "claims or damages raised by the representative parties are typical of the claims and defenses of the class." Fed.R.Civ.P. 23(a)(3). In Wal-Mart Stores, Inc. v. Dukes, the court noted:

> [w]e have previously stated in this context that '[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named

6

> plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.' General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157–158, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)."

Id. at 349, n.5. The State argues that the Cole County Prosecutor, Mr. Richardson, is not an adequate representative because he presents no defense at all against the injunction and accedes to all of the relief that plaintiffs request, with the exception of costs and attorneys' fees against him. However, plaintiffs note that Mr. Richardson has now left office and has been replaced with Locke Thompson. Plaintiffs also note that if there is any concern regarding the Cole County Prosecutor serving as Class Representative, they would have no objection to any of the other Missouri prosecuting attorneys being named as class representatives. In this case, because all of the prosecuting attorneys are charged with enforcing Mo.Rev.Stat. §265.494(7), the defense of the representative party – the Prosecuting Attorney of Cole County would be typical of the defenses raised by all of the other prosecuting attorneys in the state. Accordingly, the Court finds that the typicality requirement is also met.

### 4. Adequacy

Plaintiffs argue that Cole County Prosecuting Attorney will fairly and adequately protect the interests of the whole class and is an appropriate class representative because his interests in defending the constitutionality of the statute are the same as the other prosecuting attorneys in the state. In Dixon v. City of St. Louis, No. 4:19-CV-0112-AGF, 2019 WL 2437026, *6 (E.D.Mo. June 11, 2019),the Court stated, "[c]lass representatives and their attorneys must be able and willing to prosecute the action

7

competently and vigorously, and each representative's interests must be sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." In this case, the Court finds that the interests of the proposed class representative are sufficiently similar to those of the class because as prosecuting attorneys they are all charged with prosecuting and defending the constitutionality of Mo.Rev.Stat. §265.494(7). Accordingly, having found that the proposed class satisfies all four of the criteria of Rule 23(a), the Court proceeds to consider if the proposed class fit any of the criteria of Fed.R.Civ.P. 23(b).

Plaintiffs state that because they seek only injunctive and declaratory relief against unconstitutional application of the statute, the proposed class satisfies Fed.R.Civ.P. 23(b). Fed.R.Civ.P. 23(b) states:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
> . . .
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief on correspondingly declaratory relief is appropriate respecting the class as a whole.

The Court agrees and finds that because plaintiffs are challenging the constitutionality of the statute and because all 115 prosecuting attorneys in Missouri are charged with prosecuting violations of this statute and defending its constitutionality, plaintiffs have met the requirements to certify the Missouri Prosecuting Attorneys as a defendant class under Fed.R.Civ.P. 23(b)(2). Accordingly, the Court hereby certifies a defendant class under Fed.R.Civ.P. 23(b)(2) defined as "all Prosecuting Attorneys for the State of Missouri, in their official capacities."

### B. Motion for Preliminary Injunction

#### 1. Dataphase Factors

> In determining whether to grant a preliminary injunction a court considers (1) the probability of the movant's success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) whether the issuance of the preliminary injunction is in the public interest. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The Eighth Circuit has placed a heightened standard for enjoining state statutes. See Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 731-32 (8th Cir. 2008) (en banc) (reaffirming "that a party seeking a preliminary injunction of the implementation of a state statute must demonstrate more than just a 'fair chance' that it will succeed on the merits. We characterize this more rigorous standard, drawn from the traditional test's requirement for showing a likelihood of success on the merits, as requiring a showing that the movant 'is likely to prevail on the merits.' "). The Plaintiff bears the burden of proof concerning the four factors. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). The court balances the four factors to determine whether a preliminary injunction is warranted. Dataphase, 640 F.2d at 113; West Pub. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986). "A district court has broad discretion when ruling on preliminary injunction requests[.]" Coca-Cola Co. v. Purdy, 382 F.3d 774, 782 (8th Cir. 2004) (citing United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998)).

Dakota Rural Action v. Noem, No. CIV 19-5026, 2019 WL 4464388, at *11 (D.S.D. Sept. 18, 2019).

#### 2. Likelihood of Success On the Merits

#### Count I – Violation of the First Amendment

In their Complaint plaintiffs state that they have the right under the First Amendment to engage in truthful commercial speech and to control the content of that speech as well as to engage in protected advocacy activities. Plaintiffs argue that the statute at issue unreasonably restricts this right by prohibiting them from making truthful statements about the identity, quality, and characteristics of vegan and plant-based

9

products, including referring to their product using meat or meat analogue terms. Plaintiffs state that the statute prohibits them from truthfully labeling, marketing, and advertising plant-based meat products in a manner that effectively describes them as replacements for conventional meat.

Tofurky states that it markets and packages commercial products sold in Missouri and the marketing and packaging constitute speech. GFI states that it engages in advocacy with the public and expends resources to educate and support plant-based and clean meat companies that do business in Missouri. Plaintiffs allege that commercial speech and advocacy are both types of expression that are protected by the First Amendment. Sorrell v. IMS Health Inc., 564 U.S. 552,557, 131 S.Ct. 2653, 2659, 180 L.Ed.2d 544 (2011). Plaintiffs argue that a content based law is one that cannot be "justified without reference to the content of the regulated speech" or one that was "adopted by the government because of disagreement with the message the speech conveys." Reed v. Town of Gilbert, 135 S.Ct. 2218, 2227, 192 L.Ed.2d 236 (2015). Plaintiffs argue that the statute at issue is content based on its face because it prohibits speech based on what it says. Id.

Mo.Rev.Stat. § 265.494(7) states: "No person advertising, offering for sale or selling all or part of a carcass or food plan shall engage in any misleading or deceptive practices, including (7) . . .misrepresenting a product as meat that it not derived from harvested production livestock or poultry." The State argues that the statute only prohibits labels that suggest that plant-based or lab-grown meat is conventional meat from an animal carcass. The use of the word "meat" on a plant-based or lab-grown

product would only violate the statute if it lacked an appropriate qualifier "plant-based," "veggie," "lab-grown," "lab-created."

In Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed2d 341 (1980), the Supreme Court stated that "[t]he First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwanted governmental regulation." Id. at 561. However, the Court stated:

> Nevertheless, our decisions have recognized the 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. . . .The Constitution therefore accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. . . .The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation. The First Amendment's concern for commercial speech is based on the informational function of advertising . . .Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about unlawful activity. The government may ban forms of communication more likely to deceive the public than to inform it.

Id. at 562-63 (internal citations and quotations omitted). The Count in Central Hudson stated that in commercial speech cases, the threshold question is "whether the expression is protected by the First Amendment. For commercial speech to come within the provision, it at least must concern lawful activity and not be misleading." Id. at 566.

The State argues that the threshold question of Central Hudson decides this issue because the statue at issue only regulates false or inherently misleading commercial speech, so the First Amendment does not apply to this speech. The State argues that labels like those that Tofurky has submitted to the court that describe plant-based meat as plant-based meat, mislead no one. Tofurky even admits that there is no

11

Case 2:18-cv-04173-FJG   Document 66   Filed 09/30/19   Page 11 of 15

consumer confusion on this point. (Exh. 5 Plaintiff's Suggestions in Support). Plaintiffs state that they are likely to succeed on their First Amendment claim because they wish to engage in truthful, non-misleading speech that is prohibited by the statute. This however is precisely the reason the Court finds that plaintiffs are not likely to succeed – because the statue does not prohibit their speech. Thus, the Court finds that plaintiffs are unlikely to succeed on their First Amendment claim as applied to them, because the statute only prohibits speech which would be misleading and this is a permissible government restriction. Additionally, the State argues that plaintiffs are unlikely to succeed on a facial challenge to the statute. A facial challenge "must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). The State argues that if a company's label did not identify that the product was plant-based or lab-grown when it in fact was, the statute would unquestionably be valid. The Court agrees and finds that plaintiffs are unlikely to succeed on a facial challenge to the statute. Additionally, the State argues that plaintiffs did not assert that they would be likely to succeed on their dormant commerce clause challenge or due process challenge. As plaintiffs did not assert these claims as a basis for entry of the preliminary injunction, the Court will not analyze the probability of plaintiffs' success on these claims.

**3. Irreparable Harm**

Plaintiffs argue that a restriction on their First Amendment rights "unquestionably" constitutes irreparable harm. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). The State argues that plaintiffs will not suffer irreparable harm without an injunction because the statute does not prohibit their labels and they face no

12

realistic threat of enforcement of a contrary reading of the statute. The State argues that there is no risk of irreparable harm to plaintiffs because the statute does not do what plaintiffs say it does. (Suggestions in Opposition, p. 13). Two days after the statute took effect, the Missouri Department of Agriculture issued guidance describing the new statute and a public statement highlighting its memorandum. (Exh. A & B to Suggestions in Opposition). In the August 30, 2018 Memorandum, the Department of Agriculture stated:

> MDA[1] personnel are tasked with conducting inspections to determine compliance with the meat advertising law. The MDA director is required to report any suspected violations of the meat advertising law to the prosecuting attorney of the county where the alleged violation occurred and to the Attorney General. Violation of the meat advertising law is punishable by a class A misdemeanor.
> . . .
> To prepare for the implementation of the 2018 meat advertising law amendments, MDA studied state and federal meta advertising standards. MDA also visited with stakeholders and evaluated products currently in the marketplace. Based on this thorough review, MDA believes it is important to businesses and consumers to provide clarity about when the MDA will make referrals to a county prosecutor and the Attorney General. MDA *will not refer* products whose labels contain the following:
>
> ➢ Prominent statement on the front of the package, immediately before or immediately after the product name, that the product is "plant-based," "veggie," "lab-grown," "lab-created," or a comparable qualifier; and
>
> ➢ Prominent statement on the package that the product is "made from plants," "grown in a lab," or a comparable disclosure.
>
> In MDA's opinion, products that contain these statements do not misrepresent themselves as meat and thus do no violate Section 265.494(7). Products that do not contain these statements or similar prominent statements should be more closely examined.

---

[1] Missouri Department of Agriculture.

13

Case 2:18-cv-04173-FJG   Document 66   Filed 09/30/19   Page 13 of 15

The statute only prohibits companies from misleading consumers into believing that a product is meat from livestock when it is in fact plant-based or lab-grown. The Court agrees and finds that plaintiffs have shown no risk of irreparable harm because their labels truthfully disclose that their products are plant-based or lab-grown and the Missouri Department of Agriculture has advised that products with these types of statements on their labels do not misrepresent themselves. Thus, plaintiffs have not shown that they are at any risk of either prosecution for violating the statute or that there is any need to change their labels or advocacy efforts.

**4. Balance of Equities/Public Interest**

Plaintiffs argue that in balancing the equities, the harms caused to them by the statute far outweigh the burden an injunction would place on the State or the public. Plaintiffs state that the statute has caused GFI to divert resources it would otherwise have to invest in other advocacy efforts and Tofurky has invested significant time and resources in developing its products and marketing and packaging those products in a truthful and non-deceptive way.

The State argues that the balance of equities weighs against enjoining the statute. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." New Motor Vehicle Bd. Of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351, 98 S.Ct. 359, 363, 54 L.Ed.2d 439 (1977).The State argues that the public interest also disfavors enjoining the law because the statute "is in itself a declaration of public interest" and by definition does not support the injunction. Virginian Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 602, 81 L.Ed.2d 789 (1937). The Court agrees and finds that the both the

14

balance of equities and the public interest weigh against granting an injunction in this instance. As noted above, because Tofurky's labels truthfully state that their products are plant-based, they will not have to change anything about the manner in which they package or label their products. Additionally, GFI will not have to divert any of its resources form its advocacy efforts. On the other hand, as the State notes, an injunction would cause it irreparable harm because an injunction would invade its sovereign authority to enact and enforce its own laws. (Suggestions in Opposition, p. 14). The court agrees and finds that both the balance of harms and the public interest factors weigh in favor of denying the motion for a preliminary injunction.

After analyzing the briefing provided by the parties, the Court finds that none of the Dataphase factors support the entry of a preliminary injunction. Accordingly, finding that plaintiff's have failed to meet their burden, the Court hereby **DENIES** plaintiffs' Motion for Entry of a Preliminary Injunction (Doc. # 23).

### IV. CONCLUSION

Accordingly, for the reasons stated above, the court hereby **DENIES** plaintiffs' Motion for Preliminary Injunction (Doc. # 23); **GRANTS** plaintiffs' Motion to Certify Class (Doc. # 31); **GRANTS** Joint Motion to Amend Scheduling Order (Doc. # 35), **GRANTS** Motion to Withdraw as Attorney (Doc. # 36) and **DENIES AS MOOT** Joint Motion to Stay (Doc. # 47). The parties are hereby directed to confer regarding dates for an Amended Scheduling Order and may submit a proposal for an Amended Scheduling Order on or before **October 15, 2019**.

Date: September 30, 2019　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　United States District Judge